216 B.R. 283 (1997)
In re Allen Jerry STORIE, also known as Jerry Storie, doing business as Driftwood Construction & Supply; and Kathleen Helleckson Storie, also known as Kathy Storie, Debtors.
ANTLERS ROOF-TRUSS & BUILDERS SUPPLY, Plaintiff-Appellant,
Caddo Ready Mix; Metal Sales Manufacturing Co.; Arkansas Agri-Equipment, Inc.; and S. & L. Hog & Poultry Supply, Plaintiffs,
v.
Allen Jerry STORIE, Kathleen Helleckson Storie, And Driftwood Construction & Supply, Defendants-Appellees.
BAP No. EO-97-008, Bankruptcy No. 95-71149, Adversary No. 95-7128.
United States Bankruptcy Appellate Panel of the Tenth Circuit.
December 3, 1997.
*284 Bradley H. Mallett, Dennis, Branam & Mallett, Antlers, OK, for Plaintiff-Appellant.
Thomas B. Webb, McAlester, OK, for Defendants-Appellees.
Before CLARK, ROBINSON, and MATHESON, Bankruptcy Judges.

OPINION
CLARK, Bankruptcy Judge.
Antlers Roof-Truss & Builders Supply ("Antlers") has appealed an order of the United States Bankruptcy Court for the Eastern District of Oklahoma determining that certain debts owed by Allen Jerry Storie and Kathleen Helleckson Storie (collectively, the "Debtors") to Antlers and four other entities(collectively, the "Plaintiffs") are dischargeable in the Debtors' chapter 7 bankruptcy case.[1] For the reasons set forth *285 below, we REVERSE the order of the Bankruptcy Court as it applies to Antlers and REMAND this case to the Bankruptcy Court for further proceedings consistent with this opinion.
I. BACKGROUND
The facts are undisputed. The individual Debtors, doing business as Driftwood Construction & Supply, reside in Oklahoma. Although they were not licenced contractors, they agreed to construct eight hog barns in Arkansas. Antlers and the other Plaintiffs are materialmen and suppliers who furnished services and materials to the Debtors to construct the hog barns. The Plaintiffs' claims against the Debtors are in the total amount of $258,785, which includes Antlers's claim of $90,869.
The Debtors received $1,688,394 for the construction of the hog barns, but Antlers and the other Plaintiffs were not paid from the proceeds. The Debtors thereafter filed a petition seeking relief under chapter 7 of the Bankruptcy Code.
The Plaintiffs commenced an adversary proceeding in the Bankruptcy Court seeking an order that each of the debts owed by the Debtors to them was not dischargeable pursuant to section 523(a)(4) of the Bankruptcy Code. According to the Plaintiffs, their respective debts were the result of the Debtors' "defalcation" while acting in a fiduciary capacity as contractors under Oklahoma law. See 11 U.S.C. § 523(a)(4); 42 Okla. Stat. Ann. §§ 152(1) & 153(1). The Plaintiffs did not allege that the Debtors had engaged in fraud, embezzlement or larceny. See 11 U.S.C. § 523(a)(4).
The Debtors responded that the debts owed to the Plaintiffs were dischargeable because they had not engaged in any intentional wrong doing. Rather, they had simply underestimated their construction bid and were not paid for overruns incurred and, therefore, they were not able to pay Antlers or the other Plaintiffs.
At trial, the Debtors accounted for all but approximately $16,000 of the proceeds that they had received from construction of the hog barns. Part of that accounting revealed that the Debtors had paid themselves a salary in the approximate amount of $31,000 from the hog barn proceeds.
After the trial, the Bankruptcy Court entered an "Order Determining Debt Dischargeable."[2] The Bankruptcy Court concluded that since there was no evidence of moral dereliction or intentional wrong there was no "defalcation" as required under section 523(a)(4), and thus that the debts in question were dischargeable. This appeal followed.
II. DISCUSSION
The Bankruptcy Court's legal conclusions under section 523(a)(4) are reviewed de novo. Fowler Bros. v. Young (In re Young), 91 F.3d 1367, 1371 (10th Cir.1996) (determination under section 523(a)(4) reviewed de novo); see generally Pierce v. Underwood, 487 U.S. 552, 558, 108 S.Ct. 2541, 2546, 101 L.Ed.2d 490 (1988). Upon a review of the law, which is explained below, we conclude that the Bankruptcy Court erred in determining that "defalcation" under section 523(a)(4) requires some sort of moral dereliction or intentional wrong. We therefore reverse, but we remand this case to the Bankruptcy Court because it did not make any findings of fact or conclusions of law as to whether the Debtors acted in a "fiduciary capacity" as required under section 523(a)(4).
*286 Section 523(a) of the Bankruptcy Code states, in relevant part, that: "A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for . . . defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). Accordingly, a finding of nondischargeability under section 523(a)(4) requires a showing of (1) the existence of a fiduciary relationship between the debtor and the objecting party, and (2) a defalcation committed by the debtor in the course of that fiduciary relationship. Young, 91 F.3d at 1371.
As noted, the Bankruptcy Court did not make any findings regarding the existence of a fiduciary relationship between the Debtors and the Plaintiffs. It held that the debts in question were dischargeable based on its legal conclusion that there was not a "defalcation" as required under section 523(a)(4). Thus, although the existence of a fiduciary relationship is the threshold issue under section 523(a)(4), we will first address the Bankruptcy Court's ruling on the"defalcation" element of that section.
The word "defalcation" is not defined in the Bankruptcy Code and the legislative history to section 523(a)(4) does not aid in its interpretation. The United States Court of Appeals for the Tenth Circuit has not defined "defalcation" under section 523(a)(4), and other courts that have addressed the issue are divided on its meaning.
In the seminal case on the issue, Central Hanover Bank & Trust Co. v. Herbst, 93 F.2d 510 (2nd Cir.1937), Judge Learned Hand traced the history of the use of the word "defalcation" in the Bankruptcy Act and attempted to define it, stating, in relevant part, that:
The word, `defalcation,' first appears in section 1 of [the Bankruptcy Act of 1841] (5 Stat. 440) and only as part of the definition of those who might become voluntary bankrupts; they were those who did not owe debts `created in consequence of a defalcation as a public officer; or as executor, administrator, guardian or trustee, or while action in any other fiduciary capacity.' Colloquially perhaps the word, `defalcation,' ordinarily implies some moral dereliction, but in this context it may have included innocent defaults, so as to include all fiduciaries who for any reason were short in their accounts. It must be remembered that the `fiduciary capacity' was limited to `special' or `technical' fiduciaries. Section 11 of the [Bankruptcy] Act of 1867 (14 Stat. 521) removed the former limitations of the Act of 1841 upon voluntary bankruptcies. . . . However, for the first time not all debts were discharged, the exceptions appearing in section 33, 14 Stat. 533, which incorporated the old clause of section 1, compressed into the words, `defalcation as a public officer, or while acting in any fiduciary character,' before which it interpolated the phrase, `the fraud or embezzlement of the bankrupt.' Whatever was the original meaning of `defalcation,' it must here have covered other defaults than deliberate malversations, else it added nothing to the words, `fraud or embezzlement.' . . . 

It does not seem to us, however, that this linkage of `fraud' and `embezzlement' to `defalcation' need change its meaning in the Act of 1867. It is true that `embezzlement' certainly, and perhaps `fraud' too, become redundant when the suffix is attributed to them. . . . But that is no reason for going still further and reducing `embezzlement' and `defalcation' to synonyms, especially after the interpolation of `misappropriation' between them, which, though indeed a baffling word at best in this context, may have been put in to avoid traditional limitations clinging to the word, `embezzlement.'
We must give the words different meanings so far as we can, especially when a contrary interpretation would wrest `defalcation,' if not from its original meaning, at least from that which it must have had in the Act of 1867. The authorities are not indeed very satisfactory, but so far as they go they uniformly accord with this view, and indeed go farther.
In the case at bar the bankrupt had not been entirely innocent  not, for instance like the victim of an employee  though possibly one may acquit him of deliberate wrongdoing. A judge had awarded him *287 the money [as a court-appointed receiver], and prima facie he was entitled to it; but he knew, or if he did not know, he was charged with notice (having held himself out as competent to be an officer of the court), that the order would not protect him if it were reversed; and that it might be reversed until the time to appeal had expired. . . . We do not hold that no possible deficiency in a fiduciary's accounts is dischargeable; In Re Bernard, 87 F.2d 705, 707 [(2nd Cir.1937)], we said that `the misappropriation must be due to a known breach of the duty, and not to mere negligence or mistake.' Although that word probably carries a larger implication of misconduct than `defalcation,' `defalcation' may demand some portion of misconduct; we will assume arguendo that it does.
All we decide is that when a fiduciary takes money upon a conditional authority which may be revoked and knows at the time that it may, he is guilty of a `defalcation' though it may not be a `fraud' or an `embezzlement,' or perhaps not even a `misappropriation.'
93 F.2d at 511-12 (citations omitted) (emphasis added). In Central Hanover, therefore, Judge Hand concluded that although the language and the history of the Bankruptcy Act indicated that "defalcation" did not involve intentional misconduct, he did not have to so find because where an officer of the court is charged with knowledge and acts contrary to his or her duties as an officer there is a "defalcation" for the purposes of the dischargeability of a debt in bankruptcy.
Since Central Hanover, courts have agreed that the word "defalcation" is a failure to account for funds entrusted to a fiduciary. See, e.g., Pahlavi v. Ansari (In re Ansari), 113 F.3d 17, 20 (4th Cir.), cert. denied, ___ U.S. ____, 118 S.Ct. 298, 139 L.Ed.2d 230 (1997); Otto v. Niles (In re Niles), 106 F.3d 1456, 1460 (9th Cir.1997); Lewis v. Scott (In re Lewis), 97 F.3d 1182, 1186 (9th Cir.1996); Quaif v. Johnson, 4 F.3d 950, 955 (11th Cir.1993); San Saba Pecan, Inc. v. Failing (In re Failing), 124 B.R. 340, 344 (W.D.Okla.1989); Semilof v. Waskew (In re Waskew), 191 B.R. 34, 37 (Bankr.S.D.N.Y. 1995); State v. Kaczynski (In re Kaczynski), 188 B.R. 770, 777 (Bankr.D.N.J.1995); Burt Bldg. Material Corp. v. Silba (In re Silba), 170 B.R. 195, 201 (Bankr.E.D.N.Y.1994); Discount Home Ctr., Inc. v. Turner (In re Turner), 134 B.R. 646, 658 (Bankr.N.D.Okla. 1991); see also Kansas State Bank & Trust Co. v. Vickers (In re Vickers), 577 F.2d 683, 687 (10th Cir.1978) ("`fiduciary capacity' as used in Section 17(a)(4) [the predecessor to section 523(a)(4)] refers to money or property entrusted by one to another." (citing Allen v. Romero (In re Romero), 535 F.2d 618, 621 (10th Cir.1976))). Courts also agree that fiduciaries are charged with knowledge of their duties and of applicable law, and that a subjective intent to breach a fiduciary duty or a law is irrelevant. See, e.g., Meyer v. Rigdon, 36 F.3d 1375, 1385 (7th Cir.1994) (interpreting "defalcation" under section 523(a)(11)); Carlisle Cashway, Inc. v. Johnson (In re Johnson), 691 F.2d 249, 257 (6th Cir.1982); Carey Lumber Co. v. Bell, 615 F.2d 370, 376 (5th Cir.1980); Central Hanover, 93 F.2d at 512; Turner, 134 B.R. at 658; Anderson v. Currin (In re Currin), 55 B.R. 928, 934 (Bankr.D.Colo.1985); see also In re Hammond, 98 F.2d 703, 705 (2nd Cir.1938). The requirement that a fiduciary be charged with knowledge of his or her duties and of the law "prevents ignorance of the law from becoming a defense to nondischargeability and provides an incentive for individuals . . . who are engaged in occupations subject to special statutes to apprise themselves of their obligations under the law." Johnson, 691 F.2d at 257. It ensures that fiduciaries will perform their obligations "faithfully and with care." Niles, 106 F.3d at 1462 (citing Restatement (Second) of Trusts § 172 (1959); Restatement (Second) of Agency § 382 (1958)); see Restatement (Second) of Trusts § 174 (1959).
Furthermore, it is generally recognized that Judge Hand's analysis in Central Hanover that "defalcation" applies to conduct that does not reach the level of fraud, embezzlement, misappropriation, or larceny is accurate. See, e.g., In re Schwager, 121 F.3d 177, 184 (5th Cir.1997); Ansari, 113 F.3d at 20; Quaif, 4 F.3d at 955; Moreno v. Ashworth (In re Moreno), 892 F.2d 417, 421 (5th Cir. 1990); Carey, 615 F.2d at 376; Turner, 134 *288 B.R. at 658; Currin, 55 B.R. at 934; Nat'l Bonding & Accident Ins. Co. v. Petersen (In re Petersen), 51 B.R. 486, 488-89 (Bankr. D.Kan.1985); 4 Collier on Bankruptcy 523.10[1][b] (Lawrence P. King ed., 15th ed. rev.1997); 3 Norton Bankr. Law & Practice 2d 47:27 (William L. Norton, Jr. ed., 1997) [hereinafter Norton]. This makes sense because, as recognized by Judge Hand in Central Hanover, 93 F.2d at 512, the words "fraud," "embezzlement," and "larceny" in section 523(a)(4) must have a different meaning than the word "defalcation," and "defalcation" seems to be more encompassing than the other bad acts listed in that section. Johnson, 691 F.2d at 254.
The courts are divided, however, on the issue of what level of mental culpability the debtor-fiduciary must have to commit a "defalcation" under section 523(a)(4). Some courts have held that no mental culpability is required. "Defalcation" includes intentional, reckless, and negligent breaches of a fiduciary duty, so as to reach the conduct of fiduciaries who are short in their accounts in any way; the requisite badness being a breach of an elevated standard of care applicable to fiduciaries. See, e.g., Lewis, 97 F.3d at 1186; Failing, 124 B.R. at 344; Kwiat v. Doucette, 81 B.R. 184, 189-90 (D.Mass.1987); Waskew, 191 B.R. at 37; Kaczynski, 188 B.R. at 777-78; Central Bank v. Olinger (In re Olinger), 165 B.R. 283, 285-86 (Bankr.D.Colo.1994); Peerless Ins. Co. v. Misiaszek (In re Misiaszek), 162 B.R. 80, 82 (Bankr.D.N.H.1993); LaPointe v. Brown (In re Brown), 131 B.R. 900, 904 (Bankr.D.Me.1991); Erie Materials, Inc. v. Oot (In re Oot), 112 B.R. 497, 501 (Bankr.N.D.N.Y.1989); Schwalbe v. Gans (In re Gans), 75 B.R. 474, 490 (Bankr.S.D.N.Y. 1987); Orem Postal Credit Union v. Twitchell (In re Twitchell), 72 B.R. 431, 435-36 (Bankr.D.Utah 1987), rev'd on other grounds, 91 B.R. 961 (D.Utah 1988), rev'd, 892 F.2d 86 (10th Cir.1989)(table); Petersen, 51 B.R. at 489; Bellity v. Wolfington (In re Wolfington), 48 B.R. 920, 923 (Bankr.E.D.Pa.1985); American Metals Corp. v. Cowley (In re Cowley), 35 B.R. 526, 529 (Bankr.D.Kan. 1983), cited with approval in Schreibman v. Zanetti-Gierke (In re Zanetti-Gierke), 212 B.R. 375, 380 n. 3 (Bankr.D.Kan.1997); 3 Norton at 47:27. Others have held that "defalcation" does not include breaches of a fiduciary duty based on negligence or mistakes of fact. See, e.g., Schwager, 121 F.3d at 184 (disavowing negligence standard stated in Carey, 615 F.2d at 376, as dicta); Sheerin v. Davis (In re Davis), 3 F.3d 113, 116 (5th Cir.1993); Moreno, 892 F.2d at 421; Johnson, 691 F.2d at 257; see also Meyer, 36 F.3d at 1385 (interpreting "defalcation" under section 523(a)(11)). In excluding negligent breaches of a fiduciary duty, some of these courts have held that "defalcation" must arise from willful or reckless acts. See, e.g., Schwager, 121 F.3d at 184; Davis, 3 F.3d at 116; Moreno, 892 F.2d at 421; see also Meyer, 36 F.3d at 1385 (interpreting "defalcation" under section 523(a)(11), the court indicated that objecting party should use the "magic words `willful' or`reckless.'").
We conclude that "defalcation" under section 523(a)(4) is a fiduciary-debtor's failure to account for funds that have been entrusted to it due to any breach of a fiduciary duty, whether intentional, wilful, reckless, or negligent. Furthermore, the fiduciary-debtor is charged with knowledge of the law and its duties. Once a creditor objecting to the dischargeability of a debt under section 523(a)(4) has met its burden of showing that the debtor is a fiduciary and that its debt has arisen because the debtor-fiduciary has not paid the creditor funds entrusted to it, Young, 91 F.3d at 1371, the burden then shifts to the debtor-fiduciary to render an accounting to show that it complied with its fiduciary duties. Niles, 106 F.3d at 1461-62; Cappella v. Little (In re Little), 163 B.R. 497 (Bankr.E.D.Mich.1994).[3]
*289 Our holding, requiring no mental culpability on the part of the debtor-fiduciary, is in accord with the express language of section 523(a)(4). There is no mental state required in section 523(a)(4) for a "defalcation." In sharp contrast is section 523(a)(6), under which debts are nondischargeable for "willful and malicious" injuries by a debtor to a person or property; section 523(a)(12), under which debts are nondischargeable for "malicious or reckless" failure to fulfill a commitment to a Federal depository institutions regulatory agency to maintain capital of an insured depository institution; and other "bad acts" exceptions to discharge under section 523(a) that use terms such as "false pretenses," "false representation," "fraud," "intent to deceive," "embezzlement," and "larceny," all of which require proof of a certain mental state as a matter of law. See 11 U.S.C. § 523(a)(2) and (a)(4); see also Field v. Mans, 516 U.S. 59, 64-66, 116 S.Ct. 437, 441, 133 L.Ed.2d 351 (1995) (tracing the history of section 523(a)(2)). "Had Congress intended to reach only intentional or bad faith defalcations, it could have easily narrowed the sweep of the definition by requiring a special mental element." Johnson, 691 F.2d at 254; see Central Hanover, 93 F.2d at 511-12; cf. Grogan v. Garner, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755(1991) (silence in section 523(a) regarding burden of proof "is inconsistent with the view that Congress intended to require a special, heightened standard of proof.").
Our holding is also in accord with the purpose of section 523(a) that certain debts arising from a debtor's bad acts should not be discharged. See generally Grogan, 498 U.S. at 286, 111 S.Ct. at 659; Johnson, 691 F.2d at 255-56 (citing Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) (the policy of the bankruptcy laws is to give an honest debtor the opportunity for a fresh start)). As stated by the Sixth Circuit:
[C]reating a debt by breaching a fiduciary duty is a sufficiently bad act to invoke the [section 523(a)(4)] exception even without a subjective mental state evidencing intent to breach a known fiduciary duty or bad faith in doing so. This is because the requisite "badness," to conform with the spirit of the bankruptcy laws, is supplied by an individual's special legal status with respect to another, with its attendant duties and high standards of dealing, and the act of breaching these duties.
Johnson, 691 F.2d at 256, quoted in 3 Norton at 47:27; see Waskew, 191 B.R. at 37-38; Olinger, 165 B.R. at 286; Misiaszek, 162 B.R. at 82; Twitchell, 72 B.R. at 436.
Finally, our holding is based on a public policy to protect the integrity of fiduciary relationships. A fiduciary-trustee who is entrusted with funds under an express or technical trust as required under section 523(a)(4), see Young, 91 F.3d at 1371, has a legal duty to administer the trust solely in the interest of its beneficiaries, and to keep and render clear, accurate accounts with respect to the trust's administration. Restatement (Second) of Trusts §§ 169, 170, & 171 (1959). A fiduciary-trustee is under a duty to administer its trust with such skill and care as a person of ordinary prudence would use in dealing with his or her own property. Id. Accordingly, a person who is a fiduciary is subject to a high standard of care. When a fiduciary acts contrary to that standard of care, whether intentionally, recklessly (i.e., with a knowing disregard for injury), or negligently (i.e., by engaging in "conduct with falls below a standard established by the law for the protection of others against unreasonable risk of harm," W. Page Keeton, Prosser and Keeton on the Law of Torts, 31, at 170 (5th ed.1984)), the act must be a "defalcation." Any failure to maintain the standard of care attributable to a fiduciary is a bad act that is nondischargeable under section 523(a)(4). It would simply be against public policy to allow persons occupying fiduciary relations to be excused for debts that arise as a result of their failure to act according to the standard of care imposed on them by law.
*290 Courts rejecting negligent breaches of a fiduciary duty as being a "defalcation" have reasoned that such an interpretation of section 523(a)(4) is contrary to the policy of reading exceptions to discharge narrowly. See, e.g., Turner, 134 B.R. at 659; 3 Norton at 47:27 (citing cases). While we agree that exceptions to discharge under section 523(a) are to be construed narrowly, Bellco First Fed. Credit Union v. Kaspar (In re Kaspar), 125 F.3d 1358, 1361 (10th Cir.1997); Driggs v. Black (In re Black), 787 F.2d 503, 505 (10th Cir.1986), our interpretation of "defalcation" does not upset this policy in that the Tenth Circuit has interpreted "fiduciary" narrowly to include only individuals operating under an "express or technical trust." Young, 91 F.3d at 1371. Thus, the limited class of individuals treated as fiduciaries under section 523(a)(4) will be held to the special standard of care required of them as a matter of law and relied on by their creditors, or debts arising from breaches of their fiduciary duties will not be dischargeable. See Failing, 124 B.R. at 344 (recognizing that although "defalcation" is defined broadly, "fiduciary capacity" is defined narrowly); Freeman v. Frick (In re Frick), 207 B.R. 731, 735 (Bankr.N.D.Fla.1997) ("The narrow interpretation of fiduciary with the broad interpretation of defalcation ensures that the window of liability opens infrequently."); Brown, 131 B.R. at 904(recognizing that although "defalcation" is defined broadly, "fiduciary capacity" is defined narrowly); Gans, 75 B.R. at 490 (same).
If the Debtors were acting in a fiduciary capacity, they clearly committed a "defalcation" by failing to fully account for funds entrusted to them and paying themselves a salary prior to paying Antlers, regardless of an absence of intentional wrongdoing. However, based on the record we do not know if the Debtors were acting in a fiduciary capacity because the Bankruptcy Court did not make any findings of fact or conclusions of law on this issue.[4] Accordingly, we remand this case to the Bankruptcy Court to determine whether the Debtors were acting in a fiduciary capacity as required under section 523(a)(4). See Young, 91 F.3d at 1371 (interpreting "fiduciary capacity" narrowly).
III. CONCLUSION
Based on the above analysis, we REVERSE the Bankruptcy Court's Order finding that "defalcation" under section 523(a)(4) requires evidence of moral dereliction or an intentional wrong. However, we REMAND this case to the Bankruptcy Court to determine whether the Debtors were "acting in a fiduciary capacity" as required under section 523(a)(4).
NOTES
[1] The adversary proceeding before the Bankruptcy Court was commenced by Antlers and four other Plaintiffs: Caddo Ready Mix, Metal Sales Manufacturing Co., Arkansas Agri-Equipment, Inc., and S & L Hog & Poultry Supply. Antlers, however, was the only Plaintiff to appeal the Bankruptcy Court's order. See Notice of Appeal, p. 1. Therefore, we will consider this appeal only as it relates to Antlers. See Fed. R. Bankr.P. 8001(a); Storage Tech. Corp. v. United States Dist. Court, 934 F.2d 244, 247 (10th Cir.1991) (interpreting Rule 8001(a), court determined that appellate court does not have jurisdiction over party not expressly listed in notice of appeal).
[2] The Bankruptcy Court did not enter a separate judgment as required under Fed. R. Bankr.P. 9021. This requirement, however, can be waived. See Clough v. Rush, 959 F.2d 182, 185-86 (10th Cir.1992) (waiver of separate judgment requirement occurs where both parties proceed under mistaken assumption that order is final). Thus, the lack of a separate judgment does not affect this Court's jurisdiction. See id. at 186 (remand would not be appropriate to deal with absence of separate document setting forth judgment; efficiency and judicial economy would not be served by requiring parties to return to trial court to obtain separate judgment).
[3] In Fowler Bros., 91 F.3d at 1371, in accord with the general presumption that creditors bear the burden of proving nondischargeability under section 523(a), the Tenth Circuit summarily stated that the creditor must establish a fiduciary relationship and a defalcation committed in the course of the fiduciary relationship. Because the creditor failed to meet its burden in proving the existence of a fiduciary relationship, however, the court never reached the issue of whether a "defalcation" had occurred. Accordingly, the court did not need to address the appropriate burden of proof for proving defalcation under section 523(a)(4). Being required to squarely address the issue in this case, we agree with the Ninth Circuit's rationale in Niles, 106 F.3d at 1460-62. We note that there are other sections of section 523(a) where the debtor, as opposed to the creditor, bears the burden under section 523(a). See Woodcock v. Chemical Bank (In re Woodcock), 45 F.3d 363, 367 (10th Cir.), cert. denied, 516 U.S. 828, 116 S.Ct. 97, 133 L.Ed.2d 52 (1995)(section 523(a)(8)).
[4] As noted, the Bankruptcy Court's Order does not contain any findings of fact or conclusions of law on the issue of the existence of "fiduciary capacity." The Debtors made an oral motion to dismiss at trial based on the nonexistence of a fiduciary relationship, and that motion was denied by the Bankruptcy Court. However, it did not state its reasons for doing so. See Appellant's Appendix, Tab 6, Transcript, pp. 82-84. We are therefore left with no record to review.