**In re Carey Wade NEAL aka Wade Neal, Debtor.**

**Mark Duncan and Carrie Duncan, Plaintiffs,**

**v.**

**Carey Wade Neal aka Wade Neal, Defendant.**

**Bankruptcy No. 03–19877–WV.
Adversary No. 03–1513–WV.**

United States Bankruptcy Court, W.D. Oklahoma.

March 31, 2005.

---

Edward W. Dzialo, Jr., Godlove, Mayhall, Dzialo, Dutcher & Erwin, Lawton, OK, for Plaintiffs.

G. Rudy Hiersche, Jr., Oklahoma City, OK, for Defendant.

## MEMORANDUM OPINION

T.M. WEAVER, Chief Judge.

This adversary proceeding presents for determination the extent of the fiduciary duty owed by a contractor to an owner under OKLA. STAT. tit. 42 §§ 152 and 153, Oklahoma's "construction trust fund statutes." The issue arose in the context of the complaint of the plaintiffs-owners, Mark Duncan and Carrie Duncan ("the owners") which sought a determination that the defendant-debtor, Carey Wade Neal ("the contractor") owes them a nondischargeable debt under 11 U.S.C. § 523(a)(4).[1]

---

1. Unless otherwise specifically stated, all ref- erences to sections herein are to the United

The owners assert that the contractor, as a fiduciary, has committed a defalcation under § 523(a)(4) because he has failed to account for all construction funds paid to him. The contractor asserts that his duty to the owners is limited to the payment of lienable claims. As there were no liens on the owners' property when this adversary proceeding was filed, there was no defalcation according to the contractor.

The court agrees with the contractor that a contractor's fiduciary duty to a homeowner under the construction trust fund statutes is limited to the payment of lienable claims. However, the owners paid $4,000 of the sum necessary to obtain a release of the only lien which was filed. Thus, to the extent of such payment, the court concludes that the owners have a nondischargeable claim under § 523(a)(4).

Following the trial of this case, the court took the matter under advisement. Now, after having considered the testimony presented by the parties in support of their respective positions, having observed the candor and demeanor of the witnesses, having considered the evidence presented, having considered the arguments of counsel and being otherwise fully advised in the premises, the court renders this memorandum opinion, which shall constitute the court's findings of fact and conclusions of law pursuant to FED.R.CIV.P. 52, as made applicable to this proceeding by FED. R.BANKR.P. 7052.

*Findings of Fact*

1. In December, 2001, the owners entered into a contract ("the contract") with the contractor for the construction by the contractor of a home for the owners in Lawton, Oklahoma.

States Bankruptcy Code, 11 .U.S.C. §§ 101–

2. The owners arranged for the financing of the construction with Arvest Bank in Lawton, Oklahoma ("the bank").

3. Pursuant to the contract, the contractor submitted to the bank periodic requests for progress payments ("draw requests") during the course of construction.

4. From January, 2002, to approximately July, 2002, the bank advanced funds pursuant to the contractor's draw requests by depositing such funds into the contractor's account at the bank. After approximately July, 2002, the bank advanced funds on the contractor's draw requests by paying directly suppliers of material and labor.

5. Funds deposited in the contractor's bank account pursuant to the subject draw requests were commingled with other funds advanced by the bank for other construction projects in which the contractor was involved.

6. Comanche Home Center a/k/a Comanche Lumber Company ("Comanche Lumber") supplied building materials to the contractor for the owners' construction project as well as for other construction projects being performed at the time by the contractor.

7. The total of sums advanced by the bank for invoices of Comanche Lumber attributable to the owners' construction project was $76,298.02.

8. The contractor's evidence did not explain fully the disposition which was made of the $76,298.02 which was advanced.

9. On June 14, 2002, Comanche Lumber filed a Mechanics and Materialmen's Lien against the owners' home which contractor was constructing. The lien was in the amount of $24,924.91.

1330.

10. Comanche Lumber's lien was released on February 4, 2003, following the payment of the amount due thereon.

11. In order to obtain a release of the lien, the owners paid Comanche Lumber the sum of $4,000 and the contractor paid the remaining balance due on the lien.

12. No other liens have been filed against the owner's home. The time for filing liens against the home expired before the subject adversary proceeding was filed.

13. The construction of the owner's home has been completed. The total construction cost exceeded the price provided in the contract.

14. Due to the commingling of funds in the contractor's bank account, it cannot be determined from the evidence the exact amount of funds which were deposited therein for the construction of the owners' home.

15. The contractor used certain subcontractors on the owners' home which he also used on other projects he was building at the same time.

16. Comanche Lumber was the supplier of materials for all of the projects which contractor was constructing at the time he was building the owners' home.

17. The contractor submitted draw requests for his builder's fee on the owners' home and received payments thereon of at least $35,000.

18. The evidence is insufficient to prove that the contractor is guilty of having acted under false pretenses, or having made false representations or having committed actual fraud in connection with his submission of draw requests and receipt of advances thereon with respect to the owners' construction project.

*Discussion*

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 523. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

The owners allege that the debt owing to them by the contractor is nondischargeable under §§ 523(a)(2) and § 523(a)(4). However, the owners' argument and the legal authorities on which they rely pertain only to their § 523(a)(4) claim and not to their § 523(a)(2) claim. Further, there is a lack of evidence that the contractor committed fraud, made false representations, acted under false pretense or submitted a false financial statement within the meaning of § 523(a)(2). Thus, the owners have either abandoned their § 523(a)(2) claim or failed to support it. Accordingly, the § 523(a)(2) claim will not be further considered in this opinion.

Concerning their § 523(a)(4) claim, the owners contend that the contractor was a fiduciary under the Oklahoma construction trust fund statutes and that they are the beneficiaries of the fiduciary relationship. They argue that the contractor is guilty of defalcation in his fiduciary capacity under § 523(a)(4), because he failed to account for all of the funds which were paid to him by the owners and/or their construction lender, the bank.

In defense, the contractor maintains that his only duty under the construction trust fund statutes was to pay lienable claims. He contends that, in order to assert a claim under § 523(a)(4), there must be an outstanding lien at the time the action is brought. Since the only lien filed was released before the adversary proceeding was brought, the owner cannot prevail, argues the contractor.

The burden of persuasion in all proceedings under § 523(a) is on the credi-

tor, *see Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), and the standard of proof is preponderance of the evidence. *Id.* at 291, 111 S.Ct. 654. Exceptions to discharge under § 523(a) are to be construed narrowly. *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir.1997).

■ Section 523(a) of the Bankruptcy Code states in relevant part, that "a discharge under section 727 ... of this title does not discharge an individual debtor from any debt ... for ... defalcation while acting in a fiduciary capacity." § 523(a)(4). Accordingly, a finding of non-dischargeability under § 523(a)(4) requires a showing of (1) the existence of a fiduciary relationship between the debtor and the objecting party, and (2) a defalcation committed by the debtor in the course of that fiduciary relationship. *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir.1996).

■■ The question of fiduciary status is one of federal law; however, state law is important when determining whether a trust relationship exists. *Discount Home Ctr. v. Turner (In re Turner)*, 134 B.R. 646 (Bankr.N.D.Okla.1991). "The existence of a fiduciary relationship is a threshold issue to be determined under § 523(a)(4)." *Klenda v. Hogue (In re Hogue)*, 221 B.R. 786, 793 (Bankr N.D. Okla.1998). The Tenth Circuit has taken a very narrow view of the concept of fiduciary duty under this section.

■ Under Tenth Circuit law, to find a fiduciary relationship exists, the court must find that the money or property on which the debt at issue was based was entrusted to the debtor. *Allen v. Romero (In re Romero)*, 535 F.2d 618 (10th Cir.1976). An express or technical trust must be present for a fiduciary relationship to exist under § 523(a)(4). Trusts imposed by state statutes are technical trusts, which may lead to the existence of a fiduciary relationship. Three elements must be present before a state statute satisfies § 523(a)(4):

(1) the trust *res* must be defined by the statute;

(2) the statute must spell out the fiduciary duty; and,

(3) the statute must impose a trust on funds prior to the act creating the debt.

*Employers Workers Comp. Ass'n v. Kelley (In re Kelley)*, 215 B.R. 468, 473 (10th Cir. BAP 1997) citing *Medved v. Novak (In re Novak)*, 97 B.R. 47, 59 (Bankr.D.Kan. 1987).

■ In this case, the owners allege the existence of a fiduciary relationship as a result of the application of the Oklahoma construction trust fund statutes.[2] Courts previously have concluded that these statutes impose a fiduciary duty on a contractor to pay lienable claims of subcontractors or materialmen. Thus, a fiduciary relationship is created within the meaning of § 523(a)(4). *See Turner*, 134 B.R. at 656;

---

**2.** OKLA. STAT. tit. 42 §§ 152 & 153. Section 152(1) requires that:

The amount payable under any building or remodeling contract shall, upon receipt by any contractor or subcontractor, be held as trust funds for the payment of all lienable claims due and owing or to become due and owing by such contractors or subcontractors by reason of such building or remodeling contract.

Section 153(1) provides:
The trust funds created under Section 152 of this title shall be applied to the payment of said valid lienable claims and no portion thereof shall be used for any other purpose until all lienable claims due and owing or to become due and owing shall have been paid.

*Carey Lumber Co. v. Bell,* 615 F.2d 370 (5th Cir.1980). In addition, the Oklahoma Supreme Court has declared that homeowners are beneficiaries under the construction trust fund statutes "to the extent of any lienable claims arising from the contract between the owner and the general contractor." *Stevens v. Harris (In re Harris),* 49 P.3d 710, 716 (Okla.2002). The contractor does not dispute the existence of a fiduciary relationship in this case. Rather, he contends that he committed no acts constituting a "defalcation" while he was acting in a fiduciary capacity.

 Once a creditor objecting to the dischargeability of a debt under § 523(a)(4) has met its burden of showing that the debtor is a fiduciary and that its debt has arisen because the debtor has not paid the creditor funds entrusted to him, the burden then shifts to the debtor to render an accounting to show that it complied with its fiduciary duty. *Antlers Roof–Truss & Builders Supply v. Storie (In re Storie),* 216 B.R. 283, 288 (10th Cir. BAP 1997). A defalcation under § 523(a)(4) is a fiduciary's failure to account for funds that have been entrusted to him due to any breach of fiduciary duty, whether intentional, willful, reckless or negligent. *Storie,* 216 B.R. at 288.

 The owners' theory is that, as a fiduciary, the contractor is obligated to account to them for all funds which were advanced to the contractor for the owners' construction project. They posit that failure to establish that all such funds were expended for labor performed and/or materials used in the construction of their home constitutes a defalcation under § 523(a)(4). Conversely, the contractor argues that his obligation to the owner is not to account for all funds, but only to pay lienable claims, of which there are now none.

The owners rely on the case of *In re Storie,* 216 B.R. at 283 as support for their position. In *Storie,* a contractor received funds for a construction project, from which he paid himself a salary, but he failed to pay all materialmen and suppliers on the project. The court held that the debt owed by the contractor was nondischargeable, amounting to a defalcation while acting in a fiduciary capacity under § 523(a)(4). But, the owners cite *Storie* for the proposition that a defalcation under § 523(a)(4) occurs any time a fiduciary fails to account for all funds entrusted to it. This court does not read *Storie* that broadly.

The *Storie* court stated in pertinent part:

> We conclude that "defalcation" under section 523(a)(4) is a fiduciary-debtor's failure to account for funds that have been entrusted to it *due to any breach of a fiduciary duty,* whether intentional, wilful, reckless, or negligent..... Once a creditor objecting to the dischargeability of a debt under section 523(a)(4) has met its burden of showing that the debtor is a fiduciary and that its debt has arisen because the debtor-fiduciary has not paid the creditor funds entrusted to it, *Young,* 91 F.3d at 1371, the burden then shifts to the debtor-fiduciary to render an *accounting to show that it complied with its fiduciary duties.* (emphasis added).

*Id.* at 288. The "failure to account" to which *Storie* refers must be "due to any breach of a fiduciary duty"; and after the burden shifts, the fiduciary must "render an accounting to show that it complied with its fiduciary duties." Thus, defalcation is a contractor's failure to show that he complied with his fiduciary duty.

The contractor's fiduciary duty is defined by the trust created by the construction trust fund statutes. These statutes

make it clear that the contractor's duty is to pay lienable claims. The statutes do not impose a duty on the contractor to account for the disposition of all funds entrusted to him. Thus, upon the shifting of the burden of persuasion, the contractor's duty is to prove that the funds he received were used to pay lienable claims [3].

This statutorily imposed duty to pay lienable claims should be distinguished from the common law duty of a fiduciary to account. Since it is only express or technical (e.g., statutory) trusts which are implicated by § 523(a)(4), the only relevant fiduciary duty here is that prescribed by the construction trust fund statutes, i.e. to pay lienable claims. If there are no lienable claims, there is nothing for which the contractor must account under these statutes. In this court's view, those cases that use broad language suggesting that a failure to account for all funds entrusted to the fiduciary amounts to a defalcation under § 523(a)(4) regardless of whether there are lienable claims are confusing the common law duty to account with the more restrictive duty under the construction trust fund statutes to pay lienable claims.

The court's next inquiry then becomes: What are lienable claims? Applying basic rules of construction, it would seem that a lienable claim is a claim that is capable of becoming a lien on the building or improvement being constructed. Under Oklahoma law, one who furnishes material or labor to a contractor may obtain a lien by filing a sworn statement of lien in the county clerk's office within 90 days after the material or labor was furnished. OKLA. STAT. tit. 42 § 143. A claim not so perfected loses its "lienable" character. *Bohn v. Divine*, 544 P.2d 916, 920 (Okl.App.1975). *See also Carey Lumber Co. v. Weaver*, 41 B.R. 649 (Bankr.W.D.Okla.1984) (a materialman who failed to properly perfect a lien is not a beneficiary of the statutory trust created under § 152 and 153).

Indeed, it is the filing of a lien on the owner's property that subjects the owner to liability for the unpaid bill. As unfair as it seems for laborers and materialmen to render services and supplies for the contractor who does not pay them, the owner is not jeopardized by such failure unless the unpaid laborers or materialmen file a timely lien against the owner's property.

Here, only one lien was filed, that of Comanche Lumber in the approximate amount of $24,000. The time for filing additional liens has long since expired. Thus, to the extent of Comanche Lumber's lien, the contractor failed to discharge his fiduciary duty. However, the lien has been released. To obtain the release, the owners paid $4,000 and the contractor paid the balance due the lienholder. Had the contractor paid the entire balance, the owners would not have been harmed since the contractor would have satisfied his fiduciary duty of keeping the property free of liens, albeit belatedly.[4]

The contractor paid himself draws of more than $35,000, which he could have used to pay the additional $4,000 needed to fully satisfy the lien.[5] To the extent of

---

**3.** It should be noted that in *Storie,* the objecting creditors were material suppliers who were not paid by the contractor with the construction funds which had been entrusted to him. In the present case, however, the objecting creditors are the homeowners. A homeowner has been held to be a beneficiary under the construction trust fund statutes to

the extent there are lienable claims. *Harris,* 49 P.3d at 716.

**4.** *See Turner,* 134 B.R. at 657 (contractor has fiduciary duty to hold trust funds so that no liens are created).

**5.** Under construction trust fund statutes, a contractor is obligated to use funds to pay materialmen and laborers before using them

$4,000, the contractor failed to discharge his fiduciary duty and is guilty of defalcation under § 523(a)(4).

In summary, it is this court's conclusion that the Oklahoma construction trust fund statutes do not impose a fiduciary duty on a contractor to account (i.e., explain the disposition of) to a homeowner for all construction funds paid to him. Rather, the contractor's fiduciary duty, as prescribed by the statutes that created the trust, is to pay lienable claims. A contractor who fails to pay suppliers of labor or materials is not guilty of breach of a fiduciary duty to the homeowner unless the unpaid laborers file timely liens which are not satisfied by the contractor.

*Conclusion*

For these reasons, the court finds in favor of the plaintiffs-owners and against the defendant-contractor to the extent of $4,000. To the extent of $4,000, the plaintiffs' claim against the defendant is nondischargeable under § 523(a)(4).

A separate final judgment will be entered contemporaneously herewith.

**JUDGMENT**

Pursuant to the stipulations of the parties as contained within the Final Pretrial Order entered on September 14, 2004, and the Memorandum Opinion entered herein this day, the court hereby enters judgment in favor of the plaintiffs, Mark Duncan and Carrie Duncan, and against the defendant Carey Wade Neal on the plaintiffs' adversary complaint. Accordingly, to the extent of $4000, the debt owed by the defendant

for another purpose. *Spectrum v. Chambers (In re Chambers)*, 226 B.R. 915, 922 (Bankr.

to the plaintiff is nondischargeable under 11 U.S.C. § 523(a)(4).

