**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 28, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

In re: ARLEN ROBERT MILLIKAN,
JR.,

        Debtor,

------------------------

OKLAHOMA GROCERS
ASSOCIATION, INC., an Oklahoma
corporation,

        Plaintiff-Appellee,

  v.

ARLEN ROBERT MILLIKAN, JR.,

        Defendant-Appellant.

No. 05-5163
(D.C. No. 04-CV-112-E)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **McKAY**, and **BRORBY**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Arlen Robert Millikan, Jr. appeals the district court's affirmance of the bankruptcy court's decision not to discharge a debt to Oklahoma Grocers Association, Inc. (OGA). We have jurisdiction under 28 U.S.C. §§ 158(d) & 1291, and we AFFIRM.

I

Millikan was the president and a shareholder of Energy Title Consultants, Inc. (ETC). ETC operated check-cashing stores at which customers could purchase OGA money orders, among other transactions. Pursuant to a contract with OGA, ETC collected and remitted to OGA the proceeds from money order sales.

ETC's principal bank account was with Arvest State Bank. ETC did not open a separate account for OGA's funds; instead, ETC deposited funds into its regular account, and Arvest then remitted OGA's funds to it via electronic drafts on ETC's account. OGA was aware of ETC's procedure, and the parties operated in this manner for more than three years. A problem arose, however, when Arvest, who was also a creditor of ETC, sought to satisfy ETC's obligations to it by freezing all of ETC's funds on deposit and closing ETC's account. Unfortunately, the seized funds included $515,545.09 in OGA money order funds.

ETC and Millikan both filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. OGA brought an adversary proceeding in Millikan's case under 11 U.S.C. § 523(a)(4), which excepts from discharge debts that result

from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." After a two-day trial, the bankruptcy court held that the money order proceeds were trust funds and that ETC owed OGA a fiduciary duty in connection with collecting and remitting those funds. It further held that ETC's failure to avoid commingling the money order proceeds with its own funds and its failure to remit the full proceeds to OGA constituted defalcation. Finding that Millikan, as president of ETC, was personally liable for the defalcation, the bankruptcy court then denied discharge of the debt under § 523(a)(4).

Millikan filed a motion to amend the court's findings of fact and conclusions of law and to alter or amend the judgment, which the bankruptcy court denied. Millikan then appealed to the district court. Affirming the bankruptcy court's decision, the district court held that ETC was negligent in performing its duty to protect OGA's funds, and that ETC's conduct constituted defalcation. It also held that Millikan, as ETC's president, was liable for the corporation's defalcation. Millikan now appeals to this court.

II

The parties have conceded § 523(a)(4)'s fiduciary capacity requirement, so the sole issue on appeal is whether ETC's loss of OGA's funds constitutes "defalcation" for purposes of § 523(a)(4). This is a question of law, and as such it is reviewed de novo. *See Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996). "[E]xceptions to discharge are to be narrowly construed,

-3-

and because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor." *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997).

Millikan asserts that neither he nor ETC took, used, diverted, converted, or otherwise misappropriated OGA's proceeds, and he points out that he fully accounted for the monies—they simply were not available to OGA because of Arvest's actions. He urges us to adopt the standard set forth in *Rutanen v. Baylis (In re Baylis)*, 313 F.3d 9, 18-19 (1st Cir. 2002), in which the First Circuit held that "a defalcation requires some degree of fault, closer to fraud, without the necessity of meeting a strict specific intent requirement," and to find that there was no defalcation. In the alternative, he argues that the district court and the bankruptcy court misapplied *Antlers Roof-Truss & Builders Supply v. Storie (In re Storie)*, 216 B.R. 283, 288 (10th Cir. BAP 1997), in which this circuit's Bankruptcy Appellate Panel (BAP) held that "'defalcation' under section 523(a)(4) is a fiduciary-debtor's failure to account for funds that have been entrusted to it due to any breach of a fiduciary duty, whether intentional, wilful, reckless, or negligent."

The statute does not define defalcation, and this court has not yet defined the term. *Black's Law Dictionary* provides two modern definitions: (1) "embezzlement," and (2) "[l]oosely, the failure to meet an obligation; a non-fraudulent default." *Black's Law Dictionary* 448 (8th ed. 2004). In this

context, though, "defalcation" must mean something other than "embezzlement," as § 523(a)(4) separately references embezzlement. *Black*'s second definition, however, is rather broad; "a non-fraudulent default" may range from entirely innocent conduct to conduct closely approaching fraud. This potential range of meaning is reflected by the opinions of other circuit courts, which have established varying levels of culpability for finding a defalcation under § 523(a)(4). *See, e.g., Baylis*, 313 F.3d at 20 (requiring "something close to a showing of extreme recklessness"); *Republic of Rwanda v. Uwimana (In re Uwimana)*, 274 F.3d 806, 811 (4th Cir. 2001) (holding even an innocent mistake can constitute defalcation); *Banks v. Gill Distrib. Ctrs., Inc. (In re Banks)*, 263 F.3d 862, 870 (9th Cir. 2001) (same); *Office of Thrift Supervision v. Felt (In re Felt)*, 255 F.3d 220, 226 (5th Cir. 2001) (requiring willful conduct, described as "essentially a recklessness standard") (quotation omitted); *Carlisle Cashway, Inc v. Johnson (In re Johnson)*, 691 F.2d 249, 257 (6th Cir. 1982) (holding, in connection with § 523(a)(4)'s predecessor statute, that subjective intent to violate fiduciary duty or bad faith is irrelevant, but indicating that negligence or mistake of fact would not support finding defalcation); *Cent. Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 512 (2d Cir. 1937) (holding that defalcation is different than fraud and embezzlement, but assuming that it requires "some portion of misconduct"); *see also Meyer v. Rigdon*, 36 F.3d 1375, 1384-85 (7th Cir. 1994) (holding that a negligent breach of duty was not

sufficient to establish a defalcation under § 523(a)(11), relating to fiduciary for depository institution or insured credit union).

We need not reconcile those authorities' definitions of "defalcation." "Defalcation" requires, at least, "some portion of misconduct." *Cent. Hanover Bank*, 93 F.2d at 512. We conclude that the district court did not err in holding that, in these circumstances, there was a defalcation for purposes of § 523(a)(4). OGA's funds ultimately went to satisfy ETC's debt to Arvest Bank. Those funds were susceptible to seizure by Arvest because ETC and Millikan deposited them in ETC's general bank account, in violation of Okla. Stat. tit. 6, § 2123(a).[1] As the district court stated:

> In essence, when ETC failed to establish a separate bank account for the money order proceeds and designate that account as a *trust account* that Arvest did not have the right to setoff against, it was *consenting* to allow Arvest to pay itself with trust funds. . . . The effect is the same as if ETC had written Arvest a check for $515,545.09 and left the trust account short by that amount.

R. Doc. 39 at 9. ETC, and Millikan as its president, are chargeable with knowledge of ETC's legal duties, including its statutory duty not to commingle funds. *See In re Felt*, 255 F.3d at 226; *In re Johnson*, 691 F.2d at 257.

---

[1]     Okla. Stat. tit. 6, § 2123(a) states: "All funds collected or received from the sale of checks by an agent shall be impressed with a trust in favor of such licensee in an amount equal to the amount of the proceeds due the licensee and shall not be commingled with other funds of the agent." Money orders are included in the definition of "checks." *Id.*, § 2102(2).

Millikan strenuously argues that he did not misapply OGA's funds or use them for his own or ETC's purposes. Effectively, though, the funds benefitted ETC by paying its obligation to Arvest Bank. Millikan also asserts that commingling is a red herring, and that Arvest would have seized all the funds in ETC's account whether or not it included any funds other than OGA money order funds. This is exactly the problem – contrary to its statutory duty, ETC made OGA's funds available for seizure by placing them in its general account. Finally, we reject Millikan's argument that OGA's consent to ETC's arrangements negated ETC's obligation to comply with its statutory duties.

Appellee's motion for leave to file supplement of authorities is GRANTED. The judgment of the district court is AFFIRMED.

Entered for the Court

Wade Brorby
Circuit Judge