In re William Francis **KALINOWSKI** and Andrea Jane Kalinowski, Debtors.

In re Stephen John Kalinowski and Karen Dieter Kalinowski, Debtors.

Hawks Holdings, LLC, a Nebraska limited liability corporation, Plaintiff–Appellee,

v.

William Francis Kalinowski, Defendant–Appellant,

and

Andrea Jane Kalinowski, Defendant.

Hawks Holdings, LLC, a Nebraska limited liability corporation, Plaintiff,

v.

Karen Dieter Kalinowski and Stephen John Kalinowski, Defendants.

BAP No. NM–12–017.
Bankruptcy No. 09–12234.
Adversary No. 09–01123.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Nov. 14, 2012.

Bonnie B. Gandarilla (George M. Moore with her on the brief) of Moore, Berkson & Gandarilla, P.C., Albuquerque, NM, for Defendant–Appellant.

Christopher M. Grimmer of Scheuer, Yost & Patterson, A Professional Corporation, Santa Fe, NM (James P. Waldron of Gross & Welch, P.C., L.L.O., Omaha, Nebraska, with him on the brief) for Plaintiff–Appellee.

Before THURMAN, Chief Judge, BROWN, and SOMERS, Bankruptcy Judges.

THURMAN, Chief Judge.

This case involves dischargeability of a debt owed by an individual debtor based on breach of fiduciary duty by a limited liability company building contractor that debtor admitted he "controlled."

## I. BACKGROUND

In 2008, Appellee Hawks Holdings, LLC ("Hawks") contracted with K2 Construction Company, LLC ("K2") to build three homes on property Hawks owned near Santa Fe, New Mexico, for a contract price of more than $3.6 million. K2 was formed in 2007 as a New Mexico limited liability company, and held a general contractor's license issued under the New Mexico Construction Industries Licensing Act (the "Contractors Act").[1] K2 neither completed the construction called for by the Hawks contract, nor paid all of the subcontractors and material suppliers that had contributed to the project. However, K2's liability to Hawks is not at issue in this appeal.

The name "K2" was derived from debtor William Kalinowski's nickname, "Kal," and Karen Kalinowski ("Karen"), his sister-in-law. However, while Karen owned 51% of K2, William owned none of it. The remaining 49% of K2 was owned by Chris Ribas (30%) and the KIK Irrevocable Trust of 2007 (19%). Chris Ribas is a licensed contractor in the state of New Mexico, and was the "qualifying party" for issuance of K2's contractor's license.[2]

William and Karen, together with their respective spouses, separately filed for Chapter 7 bankruptcy relief in 2009. Hawks filed an adversary proceeding against William and Karen in their respec-

---

1. N.M. Stat. Ann. §§ 60–13–1 through 60–13–59.

2. The qualifying test for a contractor's license must be taken by a real person, so a legal entity such as K2, a limited liability company, must have a "qualifying party" take and pass the contractor's exam on its behalf in order to obtain a license. A "qualifying party" is defined under the Contractor's Act as "any individual who submits to the examination for a license to be issued under the [Contractor's Act] and who is responsible for the licensee's compliance with the requirements of that act[.]" N.M. Stat. Ann. § 60–13–2(E) (2003).

tive bankruptcies, and the two adversary proceedings were consolidated into one. Based on the "defalcation while acting in a fiduciary capacity" exception to discharge, set forth in 11 U.S.C. § 523(a)(4),[3] Hawks asserted that its claim was not subject to discharge in either William's or Karen's bankruptcy case.

Karen was listed as K2's "sole manager" in its operating agreement and organizational minutes. William was not listed as a member or manager of K2, but was authorized to sign checks on its behalf. William also was not a licensed New Mexico contractor, but admitted that he was "significantly involved in the management of the day-to-day affairs of K2." In fact, William negotiated the Hawks contract on K2's behalf, and represented to Hawks that he "was personally responsible for getting the projects built and paid for through K2." However, Karen signed the Hawks contract on behalf of K2. Karen and William routinely claimed to be co-owners and partners in several construction companies, and admitted that they consulted with each other and made joint decisions regarding K2's operation and management. In addition, William told Hawks (and others) that he "controlled and managed" K2.

Hawks paid an initial deposit of nearly $364,000 to K2 pursuant to the parties' contract. Significantly, some of the money that Hawks paid to K2 was then "pooled" into an account held by Fourteen Pueblos Construction Co., LLC ("14 Pueblos"), a company that William in fact controlled. Hawks periodically received and paid draw requests from K2 for work done on the project, but some of its payments were not used to pay for the work specified in the draw requests. Ultimately, K2 ceased work on the Hawks project. At that time, Hawks had paid a total of approximately $1,458,000 to K2. In addition, liens filed on Hawks' property by subcontractors and suppliers that K2 had failed to pay totaled nearly $587,000.

Hawks sought judgments against both William and Karen in the bankruptcy court for claimed losses related to K2's mismanagement of the construction project. On cross-motions for summary judgment, the bankruptcy court ruled that both William and Karen were liable to Hawks for its losses and, further, that Hawks' claim against them could not be discharged in bankruptcy. The basis for the bankruptcy court's ruling of non-dischargeability was that Hawks' funds were required by statute to be held in trust by K2 and the trust had been mismanaged. Following a subsequently held evidentiary hearing on Hawks' damages, the bankruptcy court entered final judgments against both Karen and William in the amount of $775,895.21 plus attorneys' fees and determined they were non-dischargeable pursuant to § 523(a)(4). Only William appealed.

## II.  APPELLATE JURISDICTION

The bankruptcy court's judgment, fully resolving the adversary proceeding, was entered on February 21, 2012. William timely filed a notice of appeal on March 6, 2012, and neither side elected to have this appeal heard by the New Mexico District Court. Therefore, this Court has appellate jurisdiction over this proceeding.[4]

## III.  ISSUES AND STANDARD OF REVIEW

■ The only issue in this appeal is whether the trial court properly deter-

---

**3.**  Unless otherwise noted, all further statutory references in this decision will be to the Bankruptcy Code, which is Title 11 of the United States Code.

**4.**  28 U.S.C. § 158(b)-(c); Fed. R. Bankr.P. 8001.

mined that William's debt to Hawks was for "defalcation while acting in a fiduciary capacity" and, therefore, non-dischargeable in bankruptcy.[5] Applicability of the § 523(a)(4) exception to discharge, based on uncontested facts, is a legal determination that is reviewed on appeal *de novo*.[6]

## IV. DISCUSSION

We begin by noting that the standard in bankruptcy cases generally is that "exceptions to discharge are to be narrowly construed, and because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor."[7] Within that context, the fiduciary defalcation exception in § 523(a)(4) has been particularly constrained,[8] and it is well settled in the Tenth Circuit that a qualifying fiduciary relationship "exists only where a debtor has been entrusted with money pursuant to an express or technical trust."[9] In addition, "the fiduciary relationship must be shown to exist prior to the creation of the debt in controversy."[10] Finally, the existence of a fiduciary relationship under § 523(a)(4) is ultimately a question of federal law, though state law

obligations are certainly relevant to the inquiry.[11]

With these principles as our guide, we consider whether the bankruptcy court properly applied the fiduciary defalcation discharge exception to William Kalinowski. No express trust was alleged, so the plaintiff's claim that William was acting as a fiduciary depends upon the existence of a "technical trust." Technical trusts are typically created by statute and, in this case, Hawks relied upon § 60–13–23(F) of the Contractors Act[12] for the existence of a trust.

As the facts are uncontested, this Court is left with a straightforward legal determination of the technical trust's applicability. The relevant portion of the state statute at issue reads:

Any [contractor's] license issued by the division shall be revoked or suspended by the commission for any of the following causes:

F. conversion of funds or property received for prosecution or completion of a specific contract or for a specified pur-

---

**5.** We note that William apparently never disputed his liability for the Hawks debt, only whether or not the debt was dischargeable in bankruptcy.

**6.** *Bucl v. Hampton (In re Hampton)*, 407 B.R. 443, 2009 WL 612491, at *1 (10th Cir. BAP Mar. 11, 2009) (existence of fiduciary duty under § 523(a)(4) is a legal conclusion, reviewed *de novo*) (citing *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996)).

**7.** *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997).

**8.** *See, e.g., Holaday v. Seay (In re Seay)*, 215 B.R. 780, 786 (10th Cir. BAP 1997) (noting that the Tenth Circuit in *Young* interpreted the phrase "fiduciary capacity" narrowly); *Duncan v. Neal (In re Neal)*, 324 B.R. 365, 370 (Bankr.W.D.Okla.2005), *aff'd*, 342 B.R.

384, 2006 WL 452340 (10th Cir. BAP Feb. 22, 2006) ("The Tenth Circuit has taken a very narrow view of the concept of fiduciary duty under this section."). *See also Crossingham Trust v. Baines (In re Baines)*, 337 B.R. 392, 400 (Bankr.D.N.M.2006) (stating that "[t]he fiduciary duty contemplated by 11 U.S.C. § 523(a)(4) is very narrow").

**9.** *Sawagerd v. Sawaged (In re Sawaged)*, CO–10–058, 2011 WL 880464, at *3 (10th Cir. BAP Mar. 15, 2011) (internal quotation marks omitted). *See also Pacini v. Ennis (In re Ennis)*, CO–12–008, 2012 WL 3727324 (10th Cir. BAP Aug. 29, 2012).

**10.** *Allen v. Romero (In re Romero)*, 535 F.2d 618, 621 (10th Cir.1976).

**11.** *In re Young*, 91 F.3d at 1371.

**12.** N.M. Stat. Ann. § 60–13–23 (1993).

pose in the prosecution or completion of any contract, obligation or purpose, as determined by a court of competent jurisdiction[.] [13]

The Tenth Circuit Court of Appeals has looked at a similar situation before. It held, in *In re Romero*, that the predecessor to this provision "clearly imposes a fiduciary duty upon contractors who have been advanced money pursuant to construction contracts." [14] The *Romero* court then held that the debtor, an individually licensed New Mexico contractor, was bound by the statutorily imposed technical trust, had violated that trust, and the debt incurred was therefore non-dischargeable under the Bankruptcy Code.

Relying heavily on *In re Baines*, [15] William argues that any fiduciary duty imposed by the Contractors Act is not applicable to him, as he is not a contractor licensed by the state of New Mexico. The *Baines* case, like the present one, involved a construction contract between the plaintiff and a corporate licensee. However, in *Baines*, one of the two individual debtors,

Robert Baines, was also the "qualifying party," as that phrase is used in the New Mexico statute, for the company (and thus himself a licensee). The allegations made in *Baines* were similar to the ones made in this proceeding, and that court ruled as a matter of law that Robert Baines was a fiduciary under the current version of the Contractors Act pursuant to *Romero*. [16] However, the court rejected applicability of the Contractors Act to Robert's wife, Deann, stating:

> Plaintiffs assert that Deann Baines, because of her connection to Building Unlimited, also served in a fiduciary capacity. But Deann Baines is not the qualifying party for the contractor's license issued to Building Unlimited. The statute upon which Plaintiffs rely to create a technical trust and a consequent fiduciary duty within the meaning of 11 U.S.C. § 523(a)(4) applies to the "licensee or qualifying party of the licensee." N.M.S.A. 1978 § 60–13–23(A)[.] [17]

---

**13.** This statute is a regulatory provision that imposes revocation of a contractor's license as a consequence of violating stated rules of conduct. As such, the statutory penalty can only directly affect contractors who are licensed under the Act. But the Act defines a "contractor" as "any person who undertakes, offers to undertake by bid or other means *or purports to have the capacity to undertake, by himself or through others, contracting*" (emphasis added). In addition, "[c]ontracting includes constructing, altering, repairing, installing or demolishing any … building, stadium or other structure[.]" N.M. Stat. Ann. § 60–13–3(A)(2) (1999). Arguably, these provisions render William subject to the Contractors Act because, at least with respect to Hawks, he was acting as a "contractor." However, as the issue of unlicensed contractor liability was neither briefed nor argued by the parties, we assume for purposes of this appeal that William was not directly subject to the Act.

**14.** *In re Romero*, 535 F.2d at 621. Paragraph F of the current statute is identical to its predecessor, except that the term "conversion" in the present statute was "diversion" in the preceding one, and the current statute adds the phrase "as determined by a court of competent jurisdiction." Whether this amendment changed the meaning of the statute, or rendered *Romero* irrelevant, was discussed in depth in *Crossingham Trust v. Baines (In re Baines)*, 337 B.R. 392, 401–04 (Bankr.D.N.M.2006), which concluded that the law remains the same.

**15.** *In re Baines*, 337 B.R. 392.

**16.** Much of the court's discussion in *Baines* regarding fiduciary duty was devoted to whether or not *In re Romero* still controlled in light of the amendment of the New Mexico statute. The court held that *Romero* was still good law.

**17.** *In re Baines*, 337 B.R. at 406.

Based on this language in *Baines*, William contends that the technical trust imposed by the Contractors Act is limited to "licensees and qualifying parties." However, the *Baines* court relied on N.M. Stat. § 60–13–23*(A)* in discussing Deann's liability, but the fiduciary defalcation claim against William was based on § 60–13–23*(F)*, which contains no similarly limiting language.

More importantly, the evidence pertaining to Deann Baines was that although she owned 49% of the corporation and was a named officer, she neither negotiated the plaintiff's contract nor participated in either the planning or execution of construction.[18] As such, Deann was subject to immunity under the well-established principle that corporate officers and shareholders cannot be held liable for the acts or debts of the corporation based on their status alone.[19] Since there was no evidence that Deann participated in the conduct for which liability was imposed, she could not be held liable for that conduct simply because she was an officer and a shareholder. Therefore, the court's statements regarding applicability of the Contractors Act to her were dicta.

▮ In the present case, K2 was a Contractors Act licensee, as well as the party that contracted with Hawks. K2 was also the party that failed to finish the project,

and that failed to properly handle and account for Hawks' funds. Therefore, the fiduciary duty owed to Hawks under the Act was owed by K2. But our inquiry does not end there, as K2 was a statutorily created entity as a limited liability company ("LLC"), and is not the debtor in this case. An LLC is analogous to a corporation, but is owned by "members" rather than shareholders, and is run by "managers" rather than officers and directors.[20] In bankruptcy filings, an LLC is treated as a corporation.[21] Corporations are legal entities that are typically treated as "persons" under the law.[22] However, a corporation can only operate through the individuals who perform its actions. Those individuals, typically owners, officers, directors, or managers of the corporation, are generally immunized from individual liability for the corporation's debts.[23] But that immunity is not unlimited, and does not extend to an individual's own acts of wrongdoing.[24]

Thus, officers, directors, and shareholders of a corporation are routinely held responsible for the corporation's liabilities where they "participated" in the corporation's wrongful conduct. An analysis of the following decisions assists this Court in reviewing the personal liability of William here. First, the appeal of another bank-

---

**18.** *Id.* at 406–10.

**19.** *See, e.g., In re Tinkler*, 311 B.R. 869, 874–75 (Bankr.D.Colo.2004). As for the plaintiffs' fraud claim under § 523(a)(2), the *Baines* court noted that Robert Baines' conduct might be imputable to Deann, but that the fraud claim was not appropriate for summary judgment. *In re Baines*, 337 B.R. at 407–08.

**20.** *See generally* "Limited Liability Company Act," N.M. Stat. Ann. §§ 53–19–1 through 53–19–74.

**21.** Official Form B1, the cover sheet for voluntary bankruptcy petitions, includes a series of check boxes for "Type of Debtor," which

include "Corporation (includes LLC and LLP)."

**22.** *See, e.g.*, 11 U.S.C. § 101(41) (In the Bankruptcy Code, a "person" can be an *individual*, a partnership, or a corporation).

**23.** *See, e.g., Stinson v. Berry*, 123 N.M. 482, 943 P.2d 129, 133 (Ct.App.1997) (shareholders, officers, and directors not personally liable for corporation's obligations).

**24.** *Id.* at 133–34.

ruptcy court case is illustrative. In *In re Failing*,[25] the debtor owned an incorporated lending company that had contracted with the plaintiff for the exclusive right to obtain financing on its behalf. Pursuant to the contract, the plaintiff paid a $30,000 deposit, which the corporation agreed to keep in trust. Instead, the plaintiff's money was placed in the corporation's general account. When no loan commitment was forthcoming, plaintiff requested that its deposit be returned. Despite repeated demands, the money was not returned, and plaintiff filed a state court action against both the corporation and the debtor, who then filed for bankruptcy relief. Plaintiff filed an adversary proceeding in the personal bankruptcy case relying, in part, on § 523(a)(4). The bankruptcy court found that the parties had created an express trust and that the plaintiff had been "cheated" out of its money by the corporation. However, it denied plaintiff's nondischargeability claim against the company's owner on the ground that plaintiff had failed to establish grounds to "pierce the corporate veil," which it held was necessary to hold the debtor personally responsible.

On appeal, the bankruptcy court's reasoning was determined to be erroneous:

> Upon review of the record and the applicable law, the court finds that the bankruptcy court erred in concluding that [debtor] could not be held personally liable such that the exception to discharge set forth in 11 U.S.C. § 523(a)(4) did not apply.
>
> This conclusion is supported by a number of decisions holding that the exception to discharge set forth in 11 U.S.C. § 523(a)(4) applies to corporate officers who directly participate in a fraud or defalcation of a creditor even if such officers are acting in the scope of their employment and *even if the corporation rather than the individual officer is actually the fiduciary under the contract or statute that establishes the trust relationship.* A corporate officer may be excepted from discharge under § 523(a)(4) even if he or she does not personally profit from the defalcation in question.[26]

Although *Failing* involved a corporate entity, many jurisdictions apply similar liability rules to members and managers of LLCs. New Mexico has defined such liability statutorily, and "[n]o member or manager of a limited liability company ... shall be obligated personally for any debt, obligation or liability of the limited liability company solely by reason of being a member or manager of the limited liability company[.]"[27] But neither are such parties immunized "from liability for the consequences of [their] own acts or omissions for which [they] otherwise may be liable."[28]

Second, a state court determination has some persuasion with this Court. In *d'Elia v. Rice Development, Inc.*,[29] a state court applied a similar, but non-statutory, standard to the managing member of an LLC. In that case, a limited partner in a real estate development limited partnership filed suit against both the LLC general partner and the LLC's owner, Gerald Rice, individually. Gerald Rice was the exclusive owner and sole managing member of Rice LLC, which in turn was the

---

25. *San Saba Pecan, Inc. v. Failing (In re Failing)*, 124 B.R. 340 (W.D.Okla.1989).

26. *Id.* at 344–45 (emphasis added) (citations omitted).

27. N.M. Stat. Ann. § 53–19–13 (1993).

28. *Id.*

29. 147 P.3d 515 (Utah Ct.App.2006).

general partner in Bridlevale, Ltd., a limited partnership formed to build and market a residential development in Utah. The LLC was found to have mishandled partnership funds and was therefore liable to the plaintiff for both breach of contract and breach of fiduciary duty.[30] But the trial court denied plaintiff's claim that Mr. Rice was personally liable for breach of fiduciary duty, concluding that the evidence failed to establish that he was the LLC's "alter ego." The trial court also refused to find Rice personally liable on the ground that plaintiff failed to establish that he had engaged in "self-dealing."

Although the appellate court agreed with the trial court's conclusion that the evidence was insufficient to pierce the corporate veil, it noted that breach of a statutory fiduciary duty is a tort claim. A claim that an individual defendant is liable for a corporate tort in which that defendant participated, "is distinct from the piercing the veil doctrine."[31] The court then considered whether LLC members were subject to the rules of individual liability applicable to their corporate counterparts, concluding that "both limited liability members and corporate officers should be treated in a similar manner when they engage in tortious conduct."[32] Finally, the court held that the trial court erred in requiring plaintiff to prove self-dealing by Rice in order to hold him personally liable, noting that "the proper legal standard is not whether Mr. Rice engaged in self-dealing, but whether he participated in Rice LLC's tortious breach of fiduciary duties."[33]

One final case is also of help. The court in *Brophy v. Ament*[34] similarly ruled that New Mexico's liability shield for members of LLCs "provides no protection when a member engages in actionable conduct . . . and the fact that a member's conduct is in connection with, or even in the service of, a limited liability company will not negate liability." Therefore, to the extent that the individual defendants in that case had been alleged to be "personally involved" in wrongdoing, their motion to dismiss was denied.[35]

Unlike Mr. Rice, William was not an official "member" of K2. Neither was he named in the company's organizational filings as a "managing member." Karen, however, was both the majority member and the sole managing member of K2, and the undisputed facts establish that she and William "managed" K2 together. The bankruptcy court concluded that William was a *"de facto"* manager of K2, as he was actively involved "as the primary decision maker for K2," stating:

William Kalinowski exercised management and control over the day-to-day activities of K2 Construction under authority delegated to him by Karen Kalinowski. He admitted that he "was the primary person involved in making decisions for K2, but she [Karen Kalinowski] was involved as well." William Kalinowski negotiated K2 Construction's contract with Hawks Holdings, represented to others that he controlled and managed K2 Construction and another limited liability company called Barranca

---

30. The LLC's fiduciary status was based on a Utah statute making general partners fiduciaries with respect to their limited partners. There was no discussion of a contractor's trust statute in that case.

31. *Id.* at 524.

32. *Id.* at 525.

33. *Id.*

34. No. Civ 07–0751, 2008 WL 4821610, at *6 (D.N.M. July 9, 2008) (internal quotation marks omitted).

35. *Id.,* at *8–9.

Builders, LLC, and gave Hawks Holdings "the very real impression that [he] was responsible" for getting the Project built for Hawks Holdings and paid for. William Kalinowski was directly involved in determining which subcontractors and suppliers of K2 Construction's construction projects for Hawks Holding would be paid. He was involved in decisions to move money from K2 Construction to a pooled account in the name of another entity called Fourteen Pueblos Construction Company ("Fourteen Pueblos"), and was aware that such fund transfers were being routinely made. He was the manager of Fourteen Pueblos and other entities. It was his ordinary practice in the construction industry to transfer money from one entity to another in order to satisfy each entity's financial obligations to its creditors. These admissions collectively establish that William Kalinowski voluntarily placed himself in a position as an agent of K2 Construction to carry out K2 Construction's fiduciary duties to Hawk's Holdings under the New Mexico Construction Industries Licensing Act.[36]

In concluding that William was acting in a fiduciary capacity with respect to Hawks, the bankruptcy court reasoned that "[w]hen an individual undertakes the duties of a trustee with regard to an express or technical trust, he is, in fact acting in a fiduciary capacity with respect to the beneficiaries of that trust."[37] We agree.

A person who exercises the powers and duties of an office under color of right is a *de facto* officer, even if ineligible to hold that office.[38] It is clear from the undisputed facts that William was a *de facto* manager of K2, and therefore subject to the same principles of law as a legal manager, such as Karen, would be. These principles include the following:

> Corporate officers are liable for their torts, although committed when acting officially, even though the acts were performed for the benefit of the corporation and without profit to the officer personally.... The plaintiff must show some form of participation by the officer in the tort, or at least show that the officer

held responsible for its failure to properly handle Hawks' funds. We do not read this provision, as William does, to *limit* fiduciary liability to the qualifying party. Rather, we consider the provision to be in the nature of a strict liability statute for qualifying parties; rendering them liable for a licensee's failure to comply with the Contractors Act, whether or not they were personally involved in the conduct. Simply defining a qualifying party as responsible for the licensee's duties under the Act does not equate with immunity for others who undertake a licensee's trust obligations from liability for their own conduct.

36. Mem. Op. at 20–21 (footnotes omitted), *in* App. at 51–52.

37. *Id.* at 20, *in* App. at 51. The court cited *In re White*, 05–2135, 2005 WL 5154692 (Bankr. S.D.Fla. Nov. 21, 2005) and *Pool v. Johnson*, 3:01–CV–1168L, 2002 WL 598447, at *4 (N.D.Tex. Apr. 15, 2002) as support for this proposition. Both cases are generally supportive of conclusion, but neither is factually similar enough to the present case to be completely relevant. In any event, William's counsel asserted at oral argument that the Contractors Act makes a licensee's qualifying party solely responsible for its fiduciary obligations, citing N.M. Stat. § 60–13–2(E). The referenced provision defines "qualifying party" as the individual who takes the licensing exam for a licensee, "and who is responsible for the licensee's compliance with the requirements" of the Contractors Act. William asserts, based on this provision, that since he was not K2's qualifying party, he cannot be

38. *United States v. MPM Contractors, Inc.*, 763 F.Supp. 488, 494 (D.Kan.1991). *See also Bank of Santa Fe v. Honey Boy Haven, Inc.*, 106 N.M. 584, 746 P.2d 1116, 1119 (1987) (*de facto* directors or officers hold, and perform the functions of, an office "under color of" an election or appointment).

directed, controlled, approved, or ratified the decision that led to the plaintiff's injury.

. . .

Personal liability for the torts of officers does not depend on the same grounds as "piercing the corporate veil". . . . The true basis of liability is the officer's violation of some duty owed to a third person that injures such third person.

These rules have been applied to principals of a limited liability company.[39]

In holding that William subjected himself to liability for defalcation of K2's fiduciary duties to Hawks, we are mindful of the long-standing admonition that this particular discharge exception must be very narrowly construed. However, we do not view this decision as broadening the exception. The *Romero* case declared in 1976 that the New Mexico Contractors Act imposes a fiduciary duty on contractors that are advanced money under a construction contract. Thus, under *Romero*, K2 owed a fiduciary duty to Hawks because Hawks advanced money to it pursuant to a construction contract. K2's mismanagement of that money constitutes a defalcation while acting in a fiduciary capacity. Likewise, the principle that agents of a corporation are liable for their own conduct while carrying out a corporation's duties is also long-standing. William in fact "controlled" K2's handling of Hawks' money, and thereby subjected himself to liability for any mishandling of those funds. William admits that he "controlled" K2, that he directed how Hawks' money would be used, and that the money was not properly handled. We conclude that absolving him of responsibility for that conduct through bankruptcy is clearly not the intent of the narrow construction rule. Hawks placed money in trust with K2, which was mismanaged by William acting as a *de facto* manager of K2. We do not believe that he can discharge that debt in bankruptcy based solely on the doctrine of narrow interpretation. William's proposed outcome would make a mockery of the fiduciary defalcation exception.

## V. CONCLUSION

K2 owed a fiduciary duty to Hawks, and William was responsible for its performance of that duty. William's mismanagement of funds entrusted to K2 by Hawks rendered him liable to Hawks for defalcation while acting in a fiduciary capacity. Therefore, we AFFIRM the trial court's judgment in favor of Hawks on its claim of non-dischargeability.

---

**39.** William M. Fletcher, *Directors, Other Officers and Agents, XXIX. Liability of Directors and Officers to Third Persons for Torts*, 3A Fletcher Cyc. Corp. § 1135 (2012) (footnotes omitted).