**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2020-NMCA-018**

**Filing Date: December 19, 2019**

**No. A-1-CA-36403**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**WILLIAM KALINOWSKI,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**T. Glenn Ellington, District Judge**

Certiorari Denied, February 24, 2020, No. S-1-SC-38102. Released for Publication
April 7, 2020.

Hector H. Balderas, Attorney General
Santa Fe, NM
John J. Woykovsky, Assistant Attorney General
Albuquerque, NM

for Appellee

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

for Appellant

**OPINION**

**VARGAS, Judge**

**{1}**　　Defendant William Kalinowski appeals his convictions for six counts of
embezzlement, contrary to NMSA 1978, Section 30-16-8 (2007), and three counts of
fraud, contrary to NMSA 1978, Section 30-16-6 (2006). Defendant argues that the
district court erred in (1) refusing to allow his expert to testify regarding the effects of the
"great recession" on local home builders; (2) limiting the testimony of his other experts;

(3) admitting evidence of other uncharged incidents in contravention of Rule 11-404(B) and Rule 11-403 NMRA; and (4) failing to dismiss the case for violation of Defendant's right to effective assistance of counsel. Finding no error, we affirm the district court on the grounds raised by Defendant.

**{2}** In addition, this Court has raised sua sponte a question regarding the sufficiency of the evidence supporting Counts 1 and 3 relating to the embezzlement of customer deposits paid to Defendant. *See State v. Clemonts*, 2006-NMCA-031, ¶ 10, 139 N.M. 147, 130 P.3d 208 (raising sufficiency of the evidence sua sponte); *State v. Maes*, 2003-NMCA-054, ¶ 5, 133 N.M. 536, 65 P.3d 584 (same). After reviewing the supplemental briefing, we conclude that Counts 1 and 3 are not supported by sufficient evidence and thus reverse the corresponding embezzlement convictions. We remand to the district court to vacate Defendant's convictions on Counts 1 and 3 and enter an amended judgment and sentence.

## BACKGROUND

**{3}** Defendant, operating through several business entities, began building homes in Santa Fe in the late 1990s under the moniker Barranca Builders. Defendant's business grew and he was eventually hired to build homes in Las Campanas luxury golf community in Santa Fe. To fund these construction projects, Defendant relied on substantial down payments from purchasers (deposits) and construction loans obtained either by purchasers or by one of his business entities. Importantly, Defendant did not strictly apply deposit funds, or funds advanced under the construction loans, to the particular projects with which they were associated. Instead, he pooled all the funds together in a single account and used them to pay all the bills of Defendant's business entities.

**{4}** Defendant contracted to build a home in Las Campanas for Robert and Janice Sostrin on October 3, 2007. Under the terms of the agreement and addendum, the Sostrins paid an initial deposit of $213,750 to Defendant. Though Robert Sostrin testified that he assumed the deposit would be used toward construction costs on his home, neither the terms of the agreement nor any conversations between Defendant and the Sostrins specified the particular purpose for which the money was to be used. Defendant ultimately failed to complete the home, liens were filed by unpaid subcontractors, and the Sostrins were forced to pay an extra $250,000 to another builder to finish the construction. These events gave rise to the crime charged in Count 1 of the indictment.

**{5}** Defendant also contracted to build three homes for Howard Hawks, doing business as Hawks Holdings, LLC (Hawks Holdings). The contract required Hawks Holdings to pay Defendant an initial deposit of $363,943. Hawks testified at trial that the deposit funds were "to get the job going[,]" though he did not point to any actual agreement between himself and Defendant as to the specific purpose for the deposit money. Defendant was unable to finish building the homes for Hawks Holdings, liens were filed against the property by various subcontractors, and Hawks Holdings

eventually had the project completed for approximately one million dollars over the original contract price. These events gave rise to the crime charged in Count 3 of the indictment.

**{6}** Based on these and similar incidents, Defendant was charged with six counts of embezzlement and three counts of fraud for his failure to finish several construction projects. At trial, Defendant was convicted on all of the charges. Defendant appeals those convictions, asserting various claims of error. This Court ordered the parties to submit supplemental briefing regarding the sufficiency of the evidence to support Defendant's embezzlement convictions related to the deposits paid to Defendant by the Sostrins and Hawks Holdings as charged in Counts 1 and 3. We begin our analysis with the sufficiency of the evidence supporting those counts and develop additional facts as necessary to the remaining issues in the body of the opinion that follows.

## DISCUSSION

### I. Sufficiency of the Evidence

**{7}** Questions of sufficiency that require us to engage in statutory interpretation "present[] a question of law which is reviewed de novo on appeal." *State v. Chavez*, 2009-NMSC-035, ¶ 10, 146 N.M. 434, 211 P.3d 891. "In interpreting a statute, our primary objective is to give effect to the Legislature's intent." *State v. Trujillo*, 2009-NMSC-012, ¶ 11, 146 N.M. 14, 206 P.3d 125. "In discerning legislative intent, we look first to the language used and the plain meaning of that language." *Id.* "[W]hen a statute contains clear and unambiguous language, we will heed that language and refrain from further statutory interpretation." *Id.*

**{8}** "After reviewing the statutory standard, we apply a substantial evidence standard to review the sufficiency of the evidence at trial." *Chavez*, 2009-NMSC-035, ¶ 11. In reviewing the sufficiency of the evidence to support Defendant's convictions for embezzlement, "we must determine whether substantial evidence, either direct or circumstantial, exists to support a guilty verdict beyond a reasonable doubt for every essential element of the crimes at issue." *State v. Mercer*, 2005-NMCA-023, ¶ 13, 137 N.M. 36, 106 P.3d 1283. "We must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (internal quotation marks and citation omitted). "The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *Id.* (alterations, internal quotation marks, and citation omitted).

**{9}** "Embezzlement consists of a person embezzling or converting to the person's own use anything of value, with which the person has been entrusted, with fraudulent intent to deprive the owner thereof." Section 30-16-8(A). In relevant part, the jury instructions for Counts 1 and 3 required the State to prove beyond a reasonable doubt:

> 1. [D]efendant was entrusted with over $20,000;

2. [D]efendant converted this money to [D]efendant's own use. "Converting something to one's own use" means keeping another's property rather than returning it, or using another's property for one's own purpose rather than the purpose authorized by the owner;

3. The money belonged to Robert and Janice Sostrin [as charged in Count 1 and Hawks Holdings as charged in Count 3];

4. At the time [D]efendant converted the money to his own use, [D]efendant fraudulently intended to deprive the owner of the owner's property. "Fraudulently intended" means intended to deceive or cheat[.]

*See* UJI 14-1641 NMRA; *see also* Section 30-16-8(A), (F).

**{10}** At issue here is whether the deposits "belonged to" the Sostrins and Hawks Holdings such that Defendant was "entrusted" with the deposits paid to him, or whether that money became his property upon payment, precluding a finding of entrustment. "One cannot be guilty of embezzlement if he converts his own property; the property converted must be that 'of another.' " 3 Wayne R. LaFave, *Substantive Criminal Law* § 19.6(d), at 130 (3d ed. 2018); *see State v. Earp*, 2014-NMCA-059, ¶ 15, 326 P.3d 491 ("[E]mbezzlement necessarily requires the conversion of the property of another[.]").

**{11}** A survey of cases from other states considering embezzlement in similar contexts have almost universally found that contractors cannot be convicted of embezzlement of down payment funds upon a failure to complete a project because the deposit money is legally the property of the contractor at the time it is paid. As explained by the Supreme Court of Iowa, "[o]nce the money changes hands, both title and possession vest in the contractor." *State v. Galbreath*, 525 N.W.2d 424, 426 (Iowa 1994); *see also Crawford v. State*, 453 So. 2d 1139, 1142 (Fla. Dist. Ct. App. 1984) (holding that a down payment to contractor does not retain its character as property belonging to the homeowner and vacating the defendant's embezzlement conviction); *State v. Marshall*, 541 N.W.2d 330, 332-33 (Minn. Ct. App. 1995) (holding that a security company who accepted advance payments could not be guilty of taking "property of another" when the company failed to perform); *Shelley v. State*, 447 So. 2d 124, 126 (Miss. 1984) (concluding even in a case of "fast talk" by a "known crook," once the owner gave money to the contractor, "it belonged to him" and as such, the defendant's conviction for embezzlement required reversal); *Commonwealth v. Austin*, 393 A.2d 36, 39 (Pa. Super. Ct. 1978) (concluding that ownership and title of the money received under a construction contract passed to the defendant when paid, requiring reversal of the defendant's theft conviction); *State v. Amanns*, 2 S.W.3d 241, 245 (Tenn. Crim. App. 1999) (stating that the homeowner relinquished all interest in her down payment at the time she paid it to the defendant under a contract for home improvement); *cf. State v. Coleman*, 33 A.3d 468, 473 (Md. 2011) ("When a defendant has a right to receive money or property, he cannot be guilty of stealing it.").

**{12}**     The facts of *Shelly* are instructive. 447 So. 2d at 124-25. In *Shelly*, the homeowners purchased a lot for purposes of constructing a retirement home. *Id.* at 124. They entered into a written contract with the defendant to construct the home completely for $20,000. *Id.* at 124-25. After the defendant cleared the site to prepare for construction to begin, the homeowners paid the defendant a down payment of $2,000 pursuant to their contract. *Id.* at 125. The homeowners issued four more payments to the defendant, bringing the total amount paid to the defendant for construction work pursuant to their contract to $13,250. *Id.* At this point, the defendant had not begun work on the home. *Id.* The defendant subsequently did a small amount of foundation work and brought some necessary materials to the work site, but stopped all work thereafter without returning any money to the homeowners. *Id.* The defendant was subsequently charged and convicted of embezzlement of the $13,250. *Id.* The Supreme Court of Mississippi reversed the conviction, holding that the money belonged to the defendant at the time it was paid to him under the contract and thus he could not be charged with embezzlement under these facts. *Id.* at 126.

**{13}**     We similarly conclude that title and ownership of the deposits vested in Defendant at the time the Sostrins and Hawks Holdings paid the money to him. *See Galbreath*, 525 N.W.2d at 426; *Crawford*, 453 So. 2d at 1142. Consequently, at the time Defendant used the deposit money for purposes other than the construction of the Sostrin and Hawks Holdings properties, the deposits already legally belonged to Defendant; he could not be found to have converted the deposits because they were his property—not "property of another." *See Earp*, 2014-NMCA-059, ¶ 15; *see also* 3 LaFave, *supra*, § 19.6(d), at 131-32 ("[A] building contractor who receives from the landowner an advance payment on the contract and who thereafter spends the money for his own purposes and does not fulfill the contract, is not guilty of embezzlement, unless the money is earmarked to be used only for a construction purpose." (footnotes omitted)). As such, we hold the State failed to present evidence sufficient beyond a reasonable doubt to prove the essential element of entrustment and reverse Defendant's convictions under Counts 1 and 3.

**{14}**     The State attempts to distinguish the facts of this case from the foregoing authority by asserting that "a trust relationship exists between homebuyers and home builders in New Mexico by statute." To support this proposition, the State directs us to the New Mexico Construction Industries Licensing Act (CILA), NMSA 1978, Section 60-13-23(F) (1993). Section 60-13-23, entitled "Revocation or suspension of license by the commission; causes," lists the circumstances under which the Construction Industries Division will revoke a contractor's license. Subsection F, on which the State relies, provides that a contractor shall have his or her license "revoked or suspended . . . for . . . conversion of funds or property received for prosecution or completion of a specific contract or for a specified purpose in the prosecution or completion of any contract, obligation or purpose, as determined by a court of competent jurisdiction[.]" *Id.* We are unpersuaded that this statute alone, setting out the circumstances under which a contractor's license will be revoked or suspended, creates a per se fiduciary relationship between all contractors and their customers in New Mexico sufficient to satisfy the entrustment element of criminal embezzlement.

**{15}** To support its construction of Section 60-13-23(F), the State points to Tenth Circuit case law interpreting this statute in the bankruptcy context. *See In re Romero*, 535 F.2d 618 (10th Cir. 1976). In *Romero* the Tenth Circuit refused to discharge the debt of a construction contractor, concluding the predecessor to Section 60-13-23(F) "clearly imposes a fiduciary duty upon contractors who have been advanced money pursuant to construction contracts." 535 F.2d at 621. This principle was applied to Defendant's bankruptcy action to prevent the discharge of his debt to Hawks Holdings. *See In re Kalinowski*, 482 B.R. 334 (B.A.P. 10th Cir. 2012).

**{16}** We note at the outset that Tenth Circuit cases are not binding on this Court. *See Moongate Water Co., Inc. v. Doña Ana Mut. Domestic Water Consumers Ass'n*, 2008-NMCA-143, ¶ 20, 145 N.M. 140, 194 P.3d 755 ("[W]e are not bound by the analyses or conclusions reached in the federal cases."). We find nothing in the language of the licensing statute that indicates an intent on the part of the Legislature to create a fiduciary or trust relationship between contractors and those who retain their services. *See Trujillo*, 2009-NMSC-012, ¶ 11 (looking "to the language used and the plain meaning of that language" to discern legislative intent). Instead, the statute focuses on circumstances that authorize the Construction Industries Division to revoke or suspend a contractor's license. Absent a more specific indication, the principle of lenity counsels against a conclusion that the element of entrustment is satisfied by the mere existence of this licensing statute. *Cf. State v. Ogden*, 1994-NMSC-029, ¶ 25, 118 N.M. 234, 880 P.2d 845 ("Statutes defining criminal conduct should be strictly construed, and doubts about construction of criminal statutes are resolved in favor of lenity."). We find the State's reliance on Section 60-13-23 unpersuasive and conclude the essential element of entrustment has not been met in this case. Accordingly, we reverse Defendant's embezzlement convictions under Counts 1 and 3.

## II. Exclusion of Defendant's Expert Ed Paschich

**{17}** Defendant argues that the exclusion of his expert, Ed Paschich, precluded him from being able to present his theory of defense: that Defendant "employed a legitimate—though flawed—business model" and was prevented from paying all his subcontractors by the onset of the "great recession." The State argues that the district court properly excluded this information as irrelevant "because it concerned Paschich's own efforts to weather the recession, and there was no showing that his situation was similar to [Defendant]'s."

**{18}** Prior to trial, the State moved to exclude testimony from Paschich. Defendant planned to have Mr. Paschich testify generally about the effects of the recent economic recession on construction contracting in New Mexico. Defendant explained that Mr. Paschich would not testify about Defendant's situation specifically and had not been provided with any information related to Defendant's case. Instead, Defendant intended to ask Mr. Paschich "to comment on the effects of the [r]ecession, how it affected builders, what builders normally do to try and weather such economic reversals, and how such customary precautions did not save some builders in this instance." In its motion to exclude Mr. Paschich's testimony, the State argued that Mr. Paschich was not

qualified to comment on the Santa Fe market because he was not building in that area during the relevant time and his testimony would be unhelpful to the jury because the actions of others were irrelevant to Defendant's conduct. After a hearing, the district court granted the State's motion, finding "the reliability of the information that [Mr. Paschich] could testify to does not necessarily translate to the situation that the jury has to address, and therefore is not an aid to their decision-making process."

**{19}** Under Rule 11-702 NMRA, district courts have broad discretion in the exclusion of expert testimony, upon consideration of whether the expert "(1) is qualified, (2) provides testimony that will assist the trier of fact, and (3) provides testimony regarding scientific, technical, or other specialized knowledge with a reliable basis." *State v. Consaul*, 2014-NMSC-030, ¶ 56, 332 P.3d 850 (internal quotation marks and citation omitted). "The prerequisite that expert testimony must assist the trier of fact to understand the evidence or to determine a fact in issue . . . goes primarily to relevance." *State v. Hughey*, 2007-NMSC-036, ¶ 17, 142 N.M. 83, 163 P.3d 470 (internal quotation marks and citation omitted). "[W]e review a district court's ruling excluding evidence for an abuse of discretion." *State v. Garcia*, 2013-NMCA-064, ¶ 11, 302 P.3d 111. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citations omitted).

**{20}** The district court determined that testimony from Mr. Paschich would not assist the trier of fact because "[Mr. Paschich] had [financial] difficulties at a time remote from the alleged circumstances in the case"; "Mr. Paschich's experience [was] . . . too remote from the situation in Santa Fe" as he was primarily building homes in Albuquerque at the time; and Mr. Paschich's overall experience with the recession was not shown to be similar to Defendant's.

**{21}** Defendant asserts that "[i]n order to put his 'lack of criminal intent' defense to the jury, it was necessary . . . to demonstrate specifically how home builders operate, how the "[g]reat [r]ecession" affected the construction industry in New Mexico, and what [Defendant] could and could not do about it." This argument misses the mark. The fact that Defendant eventually intended but was prevented from replacing any misappropriated money, does not negate that fraud and embezzlement were committed in the first place. Additionally, it is unclear on appeal, as it was to the district court, exactly how Mr. Paschich's testimony would have assisted Defendant, especially in light of the district court's findings that Mr. Paschich's experience was remote from Defendant's in both time and location, and lacked similarity. Accordingly, we conclude the district court did not abuse its discretion in excluding Mr. Paschich's testimony.

**{22}** To the extent that Defendant argues that the exclusion of Mr. Paschich's testimony infringed on his right to present a defense, we disagree. We again note that Defendant has failed to demonstrate how Mr. Paschich's testimony would actually have provided him any defense given the lack of clear exculpatory value. In any event, the

authority relied on by Defendant is inapposite because it concerns the "presumption against exclusion of *otherwise admissible defense evidence.*" *State v. Campbell*, 2007-NMCA-051, ¶ 13, 141 N.M. 543, 157 P.3d 722 (emphasis added) (internal quotation marks and citation omitted). Here, Defendant has failed to demonstrate that the evidence was otherwise admissible. We acknowledge the importance of the constitutional right of the accused to present a defense. *State v. Rosales*, 2004-NMSC-022, ¶ 7, 136 N.M. 25, 94 P.3d 768. "However, that right has never been absolute or unlimited." *Id.* "[A] defendant's interest in presenting evidence may at times bow to accommodate other legitimate interests in the criminal trial process[,]" including compliance with the rules of evidence. *Id.* (internal quotation marks and citation omitted). Because we conclude that Mr. Paschich's testimony was properly excluded under Rule 11-702, we reject Defendant's contention that he was improperly precluded from presenting his defense.

### III.   Limitation on Testimony of Other Defense Witnesses

**{23}**   Defendant argues the district court erred in impermissibly limiting the testimony of two other defense expert witnesses, Janet McHard and Anne Layne. Specifically, Defendant argues that the district court prevented his experts from testifying that Defendant's "business records did not display red flags indicative of fraud, and that the records kept by [Defendant's bookkeeper] . . . were so inaccurate that [Defendant] could not have had an idea of the precarious financial condition of his company when he continued to take draws." The State responds by asserting that the district court did not limit the testimony as Defendant asserted, and moreover, Defendant elicited this exact testimony from his expert witnesses. We conclude that Defendant has not demonstrated that the district court erred in this regard.

**{24}**   Defendant fails to point us to any portion of the record demonstrating that the district court explicitly limited or excluded any of the testimony from Ms. McHard and Ms. Layne. *See Corona v. Corona*, 2014-NMCA-071, ¶ 26, 329 P.3d 701 ("[T]he burden is on the appellant to clearly demonstrate that the district court erred."). After review of the hearing, it appears that while the district court found Defendant failed to lay sufficient foundation to permit Ms. Layne to testify regarding these points, the district court indicated it would allow Ms. McHard to testify about both issues and she did, in fact, testify about the lack of red flags and the inaccuracies in Defendant's records. Defendant makes no attempt to demonstrate how Ms. Layne's testimony would have differed from Ms. McHard's. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that we will "not review unclear or undeveloped arguments [that] require us to guess at what a part[y's] arguments might be"). Having failed to carry his burden to demonstrate error, we conclude that the district court did not impermissibly exclude or limit the testimony of Ms. McHard or Ms. Layne.

### IV.   Other Acts Evidence

**{25}**   Defendant argues that the district court abused its discretion in allowing testimony of Charles Zimmerman and James Arrington relating to "instances of a similar

nature to the nine charged in the indictment[,]" contrary to Rule 11-404(B). The State argues that the evidence was relevant for non-propensity purposes and thus was properly admitted. We conclude that the district court did not abuse its discretion in admitting the testimony.

**{26}** During the pretrial proceedings, the State filed notice of its intent to introduce evidence of uncharged misconduct including instances of improper fund diversion from projects not included in the indictment. The State explained that the evidence would be relevant to establish identity, motive, intent, and absence of mistake. The Defendant filed a motion to exclude the evidence on the grounds that it had "negligible" probative value and was impermissibly being offered to prove Defendant's propensity to commit the crimes charged. The district court denied Defendant's motion after a hearing, concluding there were non-propensity reasons offered for the testimony, including context, lack of mistake, and identity. At trial, the State offered the testimony of Charles Zimmerman and James Arrington, who each testified to incidents involving Defendant's alleged misappropriation of funds similar to the charged allegations relating to other projects in Las Campanas.

**{27}** "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 11-404(B)(1). "Rule 11-404(B) is a rule of inclusion, not exclusion, providing for the admission of all evidence of other acts that are relevant to an issue in trial, other than the general propensity to commit the crime charged." *State v. Bailey*, 2017-NMSC-001, ¶ 14, 386 P.3d 1007 (alteration, internal quotation marks, and citation omitted). Rule 11-404(B) itself provides a non-exhaustive list of potential, permissible reasons to admit such evidence, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* ¶ 13. Evidence is properly excluded under Rule 11-403 as unfairly prejudicial "if it is best characterized as sensational or shocking, provoking anger, inflaming passions, or arousing overwhelmingly sympathetic reactions, or provoking hostility or revulsion or punitive impulses, or appealing entirely to emotion against reason." *State v. Stanley*, 2001-NMSC-037, ¶ 17, 131 N.M. 368, 37 P.3d 85 (internal quotation marks and citation omitted).

**{28}** "Admission of evidence . . . under Rule 11-404(B) . . . is within the sound discretion of the [district] court, and its determination will not be disturbed on appeal in the absence of an abuse of discretion." *State v. Romero*, 2019-NMSC-007, ¶ 26, 435 P.3d 1231. "Likewise, the exclusion of relevant evidence under Rule 11-403 . . . explicitly recognizes the large discretionary role of the [district] court in controlling the introduction of evidence." *Romero*, 2019-NMSC-007, ¶ 26 (alterations, internal quotation marks, and citation omitted). "[A]n abuse of discretion results when the [district] court's decision is contrary to logic and reason." *Id.* (internal quotation marks and citation omitted).

**{29}** Defendant's other acts presented at trial through the testimony of Charles Zimmerman and James Arrington were admissible to show intent. Defendant's main

assertion at trial was that he lacked fraudulent intent when he used the funds at issue for something other than their intended purpose. Thus, evidence of other similar transactions was relevant to disprove Defendant's assertions that he lacked the requisite criminal intent. *See State v. McCallum*, 1975-NMCA-030, ¶ 7, 87 N.M. 459, 535 P.2d 1085 ("In the case of fraud, related incidents of accused's acts are admissible to establish motive, absence of mistake or accident, common scheme or plan, or the identity of the person charged with various crimes."); *cf. State v. Nguyen*, 1997-NMCA-037, ¶ 10, 123 N.M. 290, 939 P.2d 1098 ("When the defendant admits the act which constitutes the crime, but denies having the required mental state, then evidence of another, nearly identical, act is admissible to show intent and knowledge.").

**{30}**   To the extent that Defendant argues this evidence should have been excluded under Rule 11-403 as unfairly prejudicial, we are unpersuaded. Defendant himself admits that "[t]he testimony . . . added nothing to the presentation of t[h]e State's case in chief other than to demonstrate that others had experienced the same losses due to [Defendant's] failure to pay as those whose incidents were charged." This falls far short of establishing the evidence was "sensational or shocking, provoking anger, inflaming passions, or . . . provoking hostility or revulsion or punitive impulses, or appealing entirely to emotion against reason." *See Stanley*, 2001-NMSC-037, ¶ 17. Accordingly, we conclude the district court did not err in admitting other act evidence pursuant to Rule 11-404(B) or Rule 11-403.

## V.      Motion to Dismiss for Ineffective Assistance of Counsel

**{31}**   Finally, Defendant contends that the district court erred in refusing to dismiss the charges against him for violation of Defendant's right to effective assistance of counsel. The State argues that Defendant cannot be heard to complain of the district court's refusal to dismiss the case because it granted him the alternative relief he requested, and because there is no remedy to be provided in a case such as this where ineffectiveness is remedied pretrial.

**{32}**   This issue arises because it appears that Defendant initially had trouble securing sufficient resources and counsel competent for his defense. Defendant's first attorney represented him pro bono, alerted the district court to the fact that Defendant was indigent, and requested the Law Office of the Public Defender (LOPD) provide the funds necessary to mount a defense, or alternatively to appoint new counsel. The district court granted the motion and ordered the LOPD to fund necessary expert witnesses and to either contract with or provide appropriate counsel. Both Defendant's original and subsequent replacement counsel withdrew from representation, forcing the LOPD to appoint a third attorney to represent him in this case. The LOPD funded a forensic accountant, but it appears that this accountant failed to properly investigate the matter.

**{33}**   After discussing the situation with the district court at a hearing, Defendant's counsel moved to dismiss the charges, or in the alternative, stay the proceedings; order the LOPD to adequately fund Defendant's defense; and, if the LOPD did not comply, order the LOPD to show cause why they should not be held in contempt. The district

court held a hearing on the matter and ultimately denied Defendant's motion to dismiss the charges but granted the alternative relief requested by Defendant and ordered a show cause hearing, finding that the LOPD had not complied with the court's earlier order to secure competent counsel. Ultimately, the district court declined to hold the LOPD in contempt but instead appointed a special master to ensure that the LOPD complied with its previous order to "make [available] whatever resources are necessary . . . to provide effective assistance of competent counsel to [Defendant] in an adequate and timely fashion[.]"

**{34}**    In his briefing, Defendant fails to support his argument with any citation to authority for the proposition that dismissal was required in this circumstance. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists."). Additionally, Defendant does not attempt to demonstrate that the counsel and resources he received after the appointment of the special master were in any way constitutionally deficient. *See Patterson v. LeMaster*, 2001-NMSC-013, ¶ 17, 130 N.M. 179, 21 P.3d 1032 ("A prima facie case of ineffective assistance is made by showing that defense counsel's performance fell below the standard of a reasonably competent attorney and, due to the deficient performance, the defense was prejudiced." (internal quotation marks and citation omitted)); *see also Fuentes*, 2010-NMCA-027, ¶ 29 (same). We conclude Defendant has failed to demonstrate error. Our decision does not preclude Defendant's ability to pursue habeas corpus or other post-sentence relief with respect to a future claim of ineffective assistance of counsel. *See State v. Arrendondo*, 2012-NMSC-013, ¶ 44, 278 P.3d 517; *see also* Rule 5-803 NMRA (petitions for post-sentence relief).

**CONCLUSION**

**{35}**    For the foregoing reasons, we conclude there is insufficient evidence to sustain Counts 1 and 3, requiring that Defendant's convictions on those counts be reversed. Finding Defendant's other claims of error unpersuasive, we otherwise affirm. We remand this case to the district court for it to vacate Defendant's convictions as to Counts 1 and 3 and to enter an amended judgment and sentence consistent with this opinion.

**{36}    IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**I CONCUR:**

**M. MONICA ZAMORA, Judge**

**JACQUELINE R. MEDINA, Judge (dissenting in part and concurring in part).**

**MEDINA, Judge (dissenting in part and concurring in part).**

**{37}** I concur with the majority's opinion as to Parts II, III, IV, and V. However, I respectfully disagree with the majority's conclusion in Part I as to whether the evidence was sufficient to support Defendant's convictions for embezzlement as charged in Counts 1 and 3. In my opinion, Section 60-13-23(F) makes clear that funds received "for prosecution or completion of a specific contract" still belong to a contractor's client(s). Therefore I believe there was sufficient evidence that Defendant converted property belonging to another when he used the funds received from the Sostrins and Hawks Holdings for purposes other than completion of their contracts. Accordingly, I dissent.

**{38}** The majority points out that many jurisdictions have "found that contractors cannot be convicted of embezzlement of down payment funds upon a failure to complete a project because the deposit money is legally the property of the contractor at the time it is paid." Majority Op. ¶ 11. I agree that this logic is sound in jurisdictions that do not impose a fiduciary duty on contractors in regard to their client's payments. I believe, however, Section 60-13-23(F) imposes such a duty. *See* Restatement (Second) of Trusts § 23 cmt. c. (1959) ("A trust may be created by statute without a manifestation of intention on the part of any person as settlor."). As it does not appear that any of the jurisdictions the majority cites have enacted a statute similar to Section 60-13-23(F), I find these cases distinguishable.

**{39}** Although our courts have not yet had the opportunity to address Section 60-13-23(F)'s implications, the Tenth Circuit addressed its predecessor statute in *In re Romero*, 535 F.2d 618. In *In re Romero*, the issue was whether a contractor's misuse of certain monies advanced for completion of a construction project constituted "defalcation[1] while acting as an officer or in any fiduciary capacity," which is a non-dischargeable debt under the Bankruptcy Act. 535 F.2d at 620-21, n.2. The court examined the previous version of Section 60-13-23(F), which provided for the revocation or suspension of a contractor's license for "diversion of funds or property received for prosecution or completion of a specific contract, or for a specified purpose in the prosecution or completion of any contract, obligation or purpose[.]" *Romero*, 535 F.2d at 621. In light of CILA's purpose to provide "a comprehensive method for the licensing and control of contractors in order to protect the public from either irresponsible or incompetent contractors[,]" the Court concluded that NMSA 1953, Section 67-35-26(G) (1967) (Vol. 1, 1967 Pocket Supp.), "clearly imposes a fiduciary duty upon contractors who have been advanced money pursuant to construction contracts." *Romero*, 535 F.2d at 621 (quoting in part *Peck v. Ives*, 1972-NMSC-053, ¶ 5, 84 N.M. 62, 499 P.2d 684). Consequently, the Tenth Circuit held that the contractor was acting in a fiduciary capacity imposed by law, which "existed independent of any express understanding he had with [his client.]" *See Romero*, 535 F.2d at 622. The Tenth Circuit has since reaffirmed *Romero* on numerous occasions, including its application to Defendant for his contract with Hawks Holdings. *See Kalinowski*, 482 B.R. at 344 (holding that Defendant's debt owed to Hawks Holdings constituted "defalcation while acting in a fiduciary capacity" and, was therefore, non-dischargeable in bankruptcy).

---

1 "Defalcation" is defined at "[t]he fraudulent misappropriation of money held in trust; financial wrongdoing involving a breach of trust[.]" *Defalcation*, Black's Law Dictionary (11th ed. 2019).

**{40}** While Tenth Circuit cases are not binding on this Court, *see Moongate Water Co., Inc.*, 2008-NMCA-143, ¶ 20, I find *Romero* persuasive. *See State v. Long*, 1996-NMCA-011, ¶ 7, 121 N.M. 333, 911 P.2d 227 (noting that our courts follow federal law to the extent we find it persuasive). As noted, the purpose of CILA is to "provide[] a comprehensive method for the licensing and control of contractors in order to protect the public from either irresponsible or incompetent contractors." *Peck*, 1972-NMSC-053, ¶ 5; *see Mascarenas v. Jaramillo*, 1991-NMSC-014, ¶ 14, 111 N.M. 410, 806 P.2d 59 ("The wrong to be remedied is the exploitation of the public by incompetent and unscrupulous contractors who are unable or unwilling to obtain a license. In effect, the wrongs to be remedied are circumstances which permit unlicensed contractors to flourish and profit at the expense of the public."). Consistent with this purpose, CILA requires all contractors in the state of New Mexico to obtain a license, *see* NMSA 1978, § 60-13-12(A) (1989), which are only issued after an applicant meets strict licensing requirements. *See* NMSA 1978, § 60-13-14 (1997). Additionally contractors must pass an examination that tests "general business knowledge, rules and regulations of the division and the provisions of [CILA]" or complete a business and law course approved by the licensing commission. NMSA 1978, § 60-13-16(A)-(C) (1997).[2] In order to keep their license, contractors must meet industry-related continuing education requirements, *see* NMSA 1978, § 60-13-18(D) (2007), as well as refrain from committing certain prohibited acts. *See* § 60-13-23. As relevant here, Section 60-13-23(F) provides that a contractor's license "shall be revoked or suspended for," inter alia, "conversion of funds or property received for prosecution or completion of a specific contract or for a specified purpose in the prosecution or completion of any contract, obligation or purpose, as determined by a court of competent jurisdiction." In addition to losing their license, a contractor who violates Section 60-13-23(F) might be required to pay an administrative penalty of up to ten percent of the dollar amount of the contract or work performed. *See* NMSA 1978, § 60-13-23.1(A)(2) (1989). Thus, it is clear our Legislature imposes heightened duties on contractors, one of which is a duty not to convert funds received for completion of a specific contract.

**{41}** Although Section 60-13-23, on its face, merely lists grounds for revocation or suspension of a contractor's license, Subsection F nonetheless indicates that the Legislature intended to impose a fiduciary duty on the contractors of New Mexico. Importantly, after *Romero* was decided, our Legislature amended Section 60-13-23(F) to replace the phrase "*diversion* of funds or property" with "*conversion* of funds or property." *Compare* § 67-35-26(G) (emphasis added), *with* § 60-13-23(F) (emphasis added). I do not believe this alteration was without significance. Our courts generally define "conversion," in relevant part, as "the unlawful exercise of dominion and control over personal property *belonging to another* in exclusion or defiance of the owner's rights[.]" *AAA Auto Sales & Rental, Inc. v. Sec. Fed. Sav. & Loan Ass'n*, 1992-NMCA-130, ¶ 9, 114 N.M. 761, 845 P.2d 855 (emphasis added). "Conversion" in its literal sense is defined as "[t]he act of *changing from one form to another*; the process of

---

2 In the case of legal entities seeking to obtain a contractor's license, the entity must have in its employ a "qualifying party" "who submits to the examination for a license to be issued under [CILA] and who is responsible for the licensee's compliance with the requirements of [CILA.]" NMSA 1978, § 60-13-2(E) (2013); Section 60-13-14(A);

being exchanged." *Conversion*, Black's Law Dictionary (11th ed. 2019) (emphasis added); *see State v. Jade G.*, 2007-NMSC-010, ¶ 18, 141 N.M. 284, 154 P.3d 659 ("[I]n construing a statute, statutory words are presumed to be used in their ordinary and usual sense." (internal quotation marks and citation omitted)). Accordingly, when the Legislature substituted the word "diversion" with "conversion," it presumably intended to clarify that a contractor is capable of (but prohibited from) altering the nature of the funds he receives for the completion of a specific contract by using the funds for a purpose other than "prosecution or completion of a specific contract." Section 60-13-23(F). In other words, Section 60-13-23(F) recognizes that contractors have a fiduciary duty to use their client's funds received for completion of a specific contract for that purpose. Thus, by using the word "conversion," the Legislature made clear that funds received by contractors for the prosecution or completion of a specific contract still belong to the client and must be applied toward completion of the agreed upon contract unless and until the contractor completes the specified construction. To read Section 60-13-23(F) any other way would render it absurd, as a contractor could not convert their own funds. *See Foremost Ins. Co. v. Allstate Ins. Co.*, 486 N.W.2d 600, 609 (Mich. 1992) ("[A] person cannot convert his own property[.]" (alteration, internal quotation marks, and citation omitted)); *Hahn v. Tanksley*, 317 S.W.3d 145, 156 (Mo. Ct. App. 2010) ("[The defendants] could not convert their own property."); *see also State v. Peppers*, 1990-NMCA-057, ¶ 25, 110 N.M. 393, 796 P.2d 614 ("We avoid construing statutes so as to render their application absurd or unreasonable."). Accordingly, I believe contractors can be convicted of embezzling funds received from clients for "prosecution or completion of a specific contract." Section 60-13-23(F).

**{42}**   Here, the evidence was sufficient to demonstrate that Defendant received the funds for completion of the Sostrin's home, as well as the three homes for Hawks Holdings. The Sostrins paid Defendant an initial deposit of $213,750 "represent[ing] 15% of the agreed upon [b]ase [m]odel [c]ost" under the terms of the agreement and addendum entered into to construct a house on land that was to be sold to the Sostrins. Similarly, Hawks Holdings paid Defendant a "project deposit" of $363,943 to complete three homes for Howard Hawks. Additionally, the contract specified that "[Defendant's p]rofit in the amount of $20.00 per square foot of the pre-approved [c]onstruction [b]udget . . . is being withheld by [Hawks Holdings] on each house until [Hawks Holdings] sold the houses to third party purchasers.]" While the contracts did not specify that the deposits must be used for construction, I find this evidence sufficient to demonstrate that the deposits constituted "funds . . . received for prosecution or completion of a specific contract" (i.e., to complete Defendant's clients' homes), and therefore, they still belonged to Defendant's clients under Section 60-13-23(F).

**{43}**   Although Defendant was not personally licensed as a contractor, there was ample evidence that he was the de facto manager of K2 Construction Company LLC, the contractor listed as the builder in both the Sostrin's and Hawks Holdings' contracts. As the de facto manager of a legal entity licensed and operating as a contractor, Defendant was responsible for complying with CILA, including Section 60-13-23(F). *See Kalinowski*, 482 B.R. at 343-44 (holding that Defendant was the de facto manager of K2 Construction Company LLC and, therefore, subject to the same fiduciary duty imposed

by Section 60-13-23(F)). Additionally, whether or not Defendant's role vis-a-vis K2 imposed on him a duty to comply with Section 60-13-23(F), he purported to have the capacity to build the Sostrins and Hawks Holdings' homes and is, consequently, a contractor, as defined by CILA. *See* NMSA 1978, § 60-13-3(A)(2) (1999) (defining "contractor" as "any person who undertakes, offers to undertake by bid or other means or purports to have the capacity to undertake, by himself or through others, contracting [which] includes constructing . . . any . . . building"); § 60-13-12(A) ("No person shall act as a contractor without a license[.]"). And although Defendant was not, himself, a *licensed* contractor, I believe he was still subject to the fiduciary duty imposed by Section 60-13-23(F), as to interpret CILA as only imposing such a duty on licensed contractors (but not unlicensed ones) would run contrary to CILA's purpose and lead to the absurd result of creating a double standard more favorable to unlicensed contractors. *See Mascarenas*, 1991-NMSC-014, ¶ 14; *Little v. Jacobs*, 2014-NMCA-105, ¶ 20, 336 P.3d 398 ("The effect of our holding is to create another detriment to contracting without a license, which is consistent with the purpose of CILA."); *see also Peppers*, 1990-NMCA-057, ¶ 25 ("We avoid construing statutes so as to render their application absurd or unreasonable.").

**{44}**    Contrary to Defendant's fiduciary duty, however, Defendant did not strictly use the funds advanced to him for completion of the four homes, but rather pooled them together and used them to pay his many business entities' bills. As a result, the Sostrins and Hawks Holdings had to collectively pay over one million dollars to have their homes completed by other contractors. Accordingly, I would hold that there was sufficient evidence that Defendant converted property of another as to Counts 1 and 3. Lastly, because there is not an "insurmountable ambiguity" as to Section 60-13-23(F)'s import, the rule of lenity is inapplicable in this case. *See State v. Davis*, 2003-NMSC-022, ¶ 14, 134 N.M. 172, 74 P.3d 1064 ("The rule of lenity counsels that criminal statutes should be interpreted in a defendant's favor when insurmountable ambiguity persists regarding the intended scope of a criminal statute.").

**JACQUELINE R. MEDINA, Judge**