This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37658**

**STATE OF NEW MEXICO,**

　　　Plaintiff-Appellee,

v.

**CHRISTOPHER SHEPHERD,**

　　　Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Drew D. Tatum, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**B. ZAMORA, Judge.**

**{1}** Defendant Christopher Shepherd appeals his convictions for eight counts of embezzlement, contrary to NMSA 1978, Section 30-16-8(A) (2007). On appeal, Defendant argues: (1) there was insufficient evidence to support his convictions; (2) the district court abused its discretion in denying his request for a continuance; (3) the district court abused its discretion by admitting business records relating to the charge of embezzlement; and (4) the district court admitted documents in violation of his right to confrontation. We affirm.

**BACKGROUND**

**{2}**     For approximately ten years, Defendant was employed as the general manager of a UPS store located in Clovis, New Mexico. Defendant was hired as general manager by Dinesh Kumar, owner of the Clovis UPS store. Kumar allowed Defendant to manage and operate nearly every aspect of the store; Defendant was permitted to purchase supplies for the store's operation, make bank deposits, and handle customer purchases/refunds. From the period of October 2014 to June 2015, Defendant made eight transactions in the form of customer refunds, in which funds were transferred into his personal checking account. Defendant made these transactions via the Clovis UPS Store's computer system, using the store's customer refund process to deposit the money.[1]

**{3}**     The eight transactions sparked concern from Will Maguire, the regional manager for the Clovis UPS Store, because according to Maguire, the frequency and the dollar amount of the transactions were "suspicious." Maguire testified that "when you see refunds in excess of thousands of dollars, you know that's not common." Due to his concern, Maguire began investigating the matter. After receiving records that provided a detailed accounting of Defendant's eight transactions, Maguire concluded that "theft was going on at the store." Maguire informed Kumar who contacted the Clovis Police Department eventually leading the State to charge Defendant with eight counts of embezzlement for the transactions.

**{4}**     At trial, the State presented evidence that as general manager of the Clovis UPS store, Defendant could process refunds through the store's computer system, and that the money from the transactions went directly into Defendant's personal checking account. All eight transactions contained Defendant's unique employee identification number indicating that it was Defendant who processed the transaction in the Clovis UPS Store's computer. As well, Defendant admitted to completing all eight transactions.

**{5}**     Defendant testified that all eight of the transactions were intended to cover the costs associated with the use of his own money on UPS related expenditures. Defendant testified that he kept a record of all receipts associated with these expenditures, however Defendant never produced these receipts and/or any other documentation relating to the expenses incurred. Additionally, Defendant's daughter, Halena Shepherd, also a UPS store employee in 2015, testified that Defendant would spend his personal money on store-related expenses.

**{6}**     Ultimately, a jury convicted Defendant on all eight counts of embezzlement. Defendant appeals.

**DISCUSSION**

---

1The transactions ranged from $638.54 to $1,257.89. In total, Defendant's transactions amounted to $7,476.08.

## I.     Sufficient Evidence Supports Defendant's Convictions for Embezzlement

**{7}** Defendant argues there is insufficient evidence to support his convictions for embezzlement because the State failed to prove the requisite element of entrustment. In reviewing a claim for sufficiency of the evidence, we view the evidence in the "light most favorable" to the state. *State v. Faubion*, 1998-NMCA-095, ¶ 12, 125 N.M. 670, 964 P.2d 834. We determine "whether substantial evidence, either direct or circumstantial, exists to support a guilty verdict beyond a reasonable doubt for every essential element of the crimes at issue." *State v. Kalinowski*, 2020-NMCA-018, ¶ 8, 460 P.3d 79 (internal quotation marks and citation omitted). "The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (alterations, internal quotation marks, and citation omitted).

**{8}** The jury was instructed that to convict Defendant of embezzlement, the State had to prove in relevant part:

1.  That [Defendant] was entrusted with [the dollar amount corresponding to each charge];

2.  [Defendant] converted this money to [Defendant's] own use. "Converting something to one's own use" means keeping another's property rather than returning it, or using another's property for one's own purpose rather than for the purpose authorized by the owner;

3.  At the time [Defendant] converted the [money, Defendant] fraudulently intended to deprive the owner of the owner's property. "Fraudulently intended" means intended to deceive or cheat[.]

UJI 14-1641 NMRA. Defendant's argument is focused on whether the State proved he was entrusted with the funds that he was convicted of embezzling. Thus, we limit our analysis accordingly.

**{9}** The property in question must be "acquired lawfully by entrustment[.]" *State v. Hornbeck*, 2008-NMCA-039, ¶ 14, 143 N.M. 562, 178 P.3d 847. Entrustment does not have a "special or technical meaning" but rather it is "no more than holding [property] in trust or confidence." *State v. Moss*, 1971-NMCA-117, ¶ 8, 83 N.M. 42, 487 P.2d 1347. "Entrustment occurs when property is committed or surrendered to another person with certain confidence regarding the care, use, or disposal of that property." *State v. Kovach*, 2006-NMCA-122, ¶ 9, 140 N.M. 430, 143 P.3d 192 (emphases, internal quotation marks, and citation omitted).

**{10}** Our Supreme Court dealt with a factual scenario similar to this case in *State v. Peke*, 1962-NMSC-033, ¶ 15, 70 N.M. 108, 371 P.2d 226, where the defendant appealed his conviction for embezzlement and only contested the sufficiency of the state's evidence on the element of entrustment. There, the Court concluded there was substantial evidence supporting the jury's verdict that the defendant was entrusted with

the money because the defendant's employment duties included receiving and depositing checks. *Id.* ¶¶ 21-22. The office "was operated entirely under the direction and supervision" of the defendant and "practically all checks and deposits were handled by the defendant personally." *Id.* ¶ 23. Even though the defendant was never explicitly authorized to possess or control the funds associated with operating the office, the Court reasoned that "the record [was] replete with testimony showing that the defendant had implied authority[.]" *Id.* ¶ 22.

**{11}**   Similarly, here, Defendant oversaw the daily operations of the Clovis UPS store. Defendant admitted when interviewed by law enforcement, that he "pretty much . . . ran everything that had to do with the store." Defendant explained that Kumar told him to "run [the Clovis UPS Store] like it was [his.]" Defendant testified that he routinely handled the cash intake in the store and routinely made bank deposits. And, importantly, Defendant had the authority to operate the store's computer system for the purpose of processing customer refunds. Defendant testified that not only was he trained in how to perform customer refunds but also that he routinely processed customer refunds during the course of his duties. In this respect, Kumar placed Defendant, as general manager, in a position of "trust and confidence" not only with the operation of the Clovis UPS Store but with the proper processing of customer refunds. *See Moss*, 1971-NMCA-117, ¶ 8. Similar to the defendant in *Peke*, Kumar's trust in Defendant demonstrated an authority sufficient to establish the element of entrustment. *See* 1962-NMSC-033, ¶ 20 (holding that there was sufficient evidence to support the jury's finding of entrustment).

**{12}**   Nevertheless, Defendant argues that Kumar never provided him with the authority to control the funds which he is accused of embezzling. To support his argument, Defendant relies on *Kovach*, 2006-NMCA-122, ¶ 16, and *State v. Stahl*, 1979-NMCA-054, ¶ 10, 93 N.M. 62, 596 P.2d 275. However, Defendant's reliance on these cases is misplaced. In *Kovach*, this Court held that there was insufficient evidence for the defendant's charge of embezzlement because she never had "discretion or authority" over the pre-signed checks that she stole. 2006-NMCA-122, ¶ 16. In *Stahl*, we reversed the defendant's conviction for embezzlement concluding that the money in a drop-box was never "committed or surrendered to [the] defendant's care." 1979-NMCA-054, ¶ 10. Key to both *Kovach* and *Stahl*, was that each defendant was provided access to the property they were accused of embezzling, but neither defendant had any authority over the property. *See Kovach*, 2006-NMCA-122, ¶¶ 15-16 (stating that "mere access to the property converted is insufficient" where the defendant has "no discretion or authority" over the property); *Stahl*, 1979-NMCA-054, ¶ 10 (recognizing that the money at issue was never "committed, or surrendered to [the] defendant's care, use or disposal"). Unlike *Kovach* and *Stahl*, Defendant had more than mere access to the funds at issue—he had authority to process customer refunds.

**{13}**   We conclude that the State produced substantial evidence satisfying the element of entrustment. Accordingly, we hold that there was sufficient evidence to support Defendant's convictions for embezzlement.

## II. The District Court Did Not Abuse Its Discretion in Denying Defendant's Request for a Continuance Of Trial

**{14}** Defendant argues that the district court abused its discretion in denying his request to continue the trial. One business day before trial, Defendant filed a motion to continue, arguing a delay was necessary to secure the testimony of witness Missy Terry who was on vacation at the time the trial was scheduled. Defendant argued below that "Missy Terry is the only witness that [could] corroborate . . . Defendant's versions of events as she worked in the store during the time frame that [Defendant is accused of embezzling money from UPS]." On the first day of trial, the district court held a hearing on the motion; when defense counsel was unable to appear due to his attendance at another hearing in the same courthouse, the district court denied the continuance. Later, after jury selection, and with defense counsel present, the district court heard argument on the continuance and again, denied Defendant's request.

**{15}** "The grant or denial of a continuance is within the sound discretion of the trial court, and the burden of establishing [an] abuse of discretion rests with the defendant." *State v. Salazar*, 2007-NMSC-004, ¶ 10, 141 N.M. 148, 152 P.3d 135. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

**{16}** Our Supreme Court has provided seven factors that a court should consider in deciding whether to grant or deny a request for a continuance:

> [(1)] the length of the requested delay, [(2)] the likelihood that a delay would accomplish that movant's objectives, [(3)] the existence of previous continuances in the same matter, [(4)] the degree of inconvenience to the parties and the court, [(5)] the legitimacy of the motives in requesting the delay, [(6)] the fault of the movant in causing a need for the delay, and [(7)] the prejudice to the movant in denying the motion.

*State v. Torres*, 1999-NMSC-010, ¶ 10, 127 N.M. 20, 976 P.2d 20. We address each factor in turn.

**{17}** To begin, we briefly address the first two *Torres* factors, the length of the requested delay and the likelihood it would accomplish Defendant's objective in seeking the delay. Defendant requested to delay the trial for approximately one month, to the district court's next docket call. This delay of one month is directly related to Defendant's objective in requesting a continuance. And, the delay would have accomplished Defendant's objective because it would have allowed Terry to return from her vacation and testify at the trial. The first two *Torres* factors favor granting Defendant's requested continuance.

**{18}** Third, we look to the existence of previous continuances in the matter. The request at issue was not Defendant's first requested continuance. The first continuance occurred when defense counsel was newly assigned, and the district court granted Defendant's request to continue so defense counsel could acquaint himself with the case. The district court also granted Defendant's second request to delay the trial so that defense counsel would have additional time to review discovery documents. The State and Defendant mutually requested a continuance for Defendant to provide his investigator more time to locate potential witnesses and for the State to discuss discovery related matters with their witnesses. Over the course of the proceedings, the State only made one separate request to continue the trial for the purpose of securing the testimony of Maguire, which the district court granted. Overall, as this was Defendant's third request to delay the trial, and, if granted would have been the fifth continuance in the case, this factor supports the district court's denial of Defendant's requested continuance.

**{19}** Fourth, we consider whether Defendant's requested continuance may have caused any inconvenience to the parties or the district court. Defendant filed the motion for continuance one business day before trial. Motions for continuances "filed at the last minute [are] not favored." *State v. Aragon*, 1997-NMCA-087, ¶ 22, 123 N.M. 803, 945 P.2d 1021. One day is a short turn-around, and thus, this *Torres* factor does not bolster Defendant's argument.

**{20}** Turning to the fifth *Torres* factor, the legitimacy of Defendant's motives in requesting a continuance, there is nothing in the record to indicate that Defendant's motive in requesting the continuance was illegitimate, and the State does not make any argument as such. Since the facts "necessary to consider [this] contention" are not in the record, we cannot consider the relevancy of this factor. *See State v. Vincent*, 2005-NMCA-064, ¶ 9, 137 N.M. 462, 112 P.3d 1119.

**{21}** As to the sixth factor, whether Defendant contributed to the need for a continuance, we highlight the district court's finding that Defendant's requested continuance occurred twenty months after the criminal information was filed and Defendant only provided the witness list, which included Terry, one month before trial. While Defendant hired an investigator to locate all witnesses necessary to support Defendant's defense, and there was some initial delay in securing the witnesses, there is nothing in the record to indicate that these delays continued as the case progressed toward the eventual trial date or somehow impacted Defendant's ability to secure the testimony of Terry. In light of this twenty-month difference between the beginning of the proceedings in this case and Defendant's eventual filing of the witness list one month before trial, the sixth *Torres* factor supports the district court's denial of a continuance.

**{22}** Lastly, we address the seventh *Torres* factor, whether the denial of Defendant's continuance prejudiced his ability to present a defense. "[W]here [a] continuance is sought to obtain defense witnesses, in order to show prejudice, there *must* be a showing that the witness was willing to testify and would have given *substantially favorable evidence*." *State v. Salazar*, 2006-NMCA-066, ¶ 28, 139 N.M. 603, 136 P.3d

1013 (emphases added). During trial, Defendant and his daughter Halena testified with varying degrees of specificity that from October 2014 to July 2015, Defendant used his personal money to pay store related expenses.

**{23}** Notwithstanding Defendant's and Halena's testimony, Defendant asserts that, due to Terry being a "disinterested party," rather than a family member, the jury would have "afford[ed] different weight to her testimony[,]" which he claims is important in a case in which the jury's primary responsibility is determining credibility. While Defendant did indicate to the district court both through his written motion, and in the form of argument, that Terry was the only witness who could corroborate Defendant's version of events, Halena's testimony demonstrates Terry was not the only witness to provide such evidence. Halena testified that on numerous occasions she witnessed Defendant purchase items for the store using his own money, including Defendant's purchases of salt for the parking lot, and a vacuum cleaner for use in cleaning the store. Halena's testimony corroborated Defendant's version of events.

**{24}** In demonstrating prejudice, a defendant bears a burden to show that a potential witness's testimony would have provided substantially favorable evidence, and that an avenue of defense was rendered unavailable by the denial of such testimony. *See Salazar*, 2007-NMSC-004, ¶¶ 16, 28. A blanket assertion that a witness is disinterested, absent any other specifics regarding the nature of the witness's testimony, is insufficient to demonstrate prejudice when contesting a district court's denial of a continuance. *See generally Torres*, 1999-NMSC-010, ¶ 12 (recognizing that in demonstrating prejudice as a result of a denial of a continuance, a defendant must make must a "plausible showing of how the witness's testimony would have been both material and *favorable* to his defense." (emphasis added) (alteration, internal quotation marks, and citation omitted)). Defendant's sparse claim, without ever making a proffer of the specifics of Terry's testimony, failed to demonstrate that her absence caused "injury" to Defendant's defense, thereby resulting in prejudice. *See id.* (providing that the defendant "made a sufficient proffer that the testimony would have been both material and favorable to his defense").

**{25}** Overall, considering the *Torres* factors, we hold that the district court did not abuse its discretion in denying Defendant's continuance request. Therefore, we affirm the district court's denial of Defendant's request for a continuance.

### III.    The District Court Did Not Abuse Its Discretion in Admitting Records of Defendant's Eight Transactions

**{26}** Defendant argues the district court abused its discretion in admitting Defendant's eight refund transactions (the Exhibits) from the Clovis UPS store because they were inadmissible hearsay. "We review the district court's admission of evidence for an abuse of discretion." *State v. Cofer*, 2011-NMCA-085, ¶ 7, 150 N.M. 483, 261 P.3d 1115 (internal quotation marks and citation omitted). An abuse of discretion occurs when a "ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted).

**{27}** Hearsay is any statement, other than one made by the declarant, offered to prove the truth of the matter asserted in that statement. Rule 11-801(C) NMRA. Hearsay is only admissible through an exception. *See* Rule 11-802 NMRA. One such exception, known as the business records exception, allows the admission of hearsay statements when the record at issue was made at or near the time by (1) an individual with "knowledge"; (2) "the record was kept in the course of a regularly conducted activity of a business"; (3) the "making of the record was a regular practice of that activity"; and (4) "all these conditions were shown by the testimony of the custodian or another qualified witness[.]" Rule 11-803(6)(a)-(d) NMRA. Defendant's sole argument is that Maguire was not a proper records custodian and/or a qualified witness because he did not personally create the records and/or had no personal knowledge as to how the records were created.

**{28}** We have recognized, when interpreting the foundational requirements under Rule 11-803(6), that a record may be admitted through either the testimony of the custodian of the record or "other qualified witness." *State v. Ruiz*, 1980-NMCA-123, ¶ 17, 94 N.M. 771, 617 P.2d 160 (internal quotation marks and citation omitted), *superseded by statute on other grounds as stated in State v. McCormack*, 1984-NMCA-042, ¶ 12, 101 N.M. 349, 682 P.2d 742. "The phrase 'other qualified witness' should be given the broadest interpretation; he [or she] need not be an employee of the entity so long as he [or she] understands the system." *Id.* (internal quotation marks and citation omitted).

**{29}** Here, Maguire was a qualified witness to admit the Exhibits. Maguire, the regional manager responsible for the Clovis UPS store, testified to each of the necessary conditions under the business records exception. Maguire testified that the Exhibits were made at or near the time of their creation and that the store's computer system kept a record of each of Defendant's transactions at the exact time and date the transaction was made. Second and third, Maguire testified that the records reflected in the Exhibits were routinely generated by the store's computer system and a record of each transaction was made as a regular practice within the store. Fourth, although Maguire did not compile or generate the records himself, "[t]here is no requirement [under Rule 11-803(6)] that to be qualified, the witness must have been the person who prepared the records." *Ruiz*, 1980-NMCA-123, ¶ 18. As demonstrated through his testimony and experience as regional manager, Maguire was an individual who "unders[tood] the system" by which electronically generated transaction records at the Clovis UPS Store were created and stored. *Id.* ¶ 17. Maguire testified that as regional manager he would routinely access similar computer systems in the course of his duties and testified specifically that he could access the Clovis UPS Store's computer system "at any time" should he choose. Accordingly, because Maguire was a qualified witness, we hold the district court did not abuse its discretion in admitting the Exhibits under Rule 11-803(6).

## IV. The Admission of the Exhibits Did Not Violate Defendant's Right to Confrontation

**{30}** Lastly, Defendant argues that the admission of the Exhibits violated his right to confrontation because the information in the records was "testimonial in nature." Defendant's primary contention is that because Maguire did not create the records of the transactions himself, Defendant's right to confrontation was violated because he was unable to cross-examine the individual who created the records. As we noted above, the Exhibits at issue were properly admitted as business records. Business records created in the regular course of business are generally not testimonial for the purposes of a defendant's right to confrontation. *See Crawford v. Washington*, 541 U.S. 36, 56 (2004) ("Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records[.]"); *see also State v. Gallegos*, 2016-NMCA-076, ¶ 46, 387 P.3d 296 (stating that "merchandise price lists were not testimonial because the underlying price data was not prepared for litigation but, instead, kept in the ordinary course of business"). Because the district court properly admitted the Exhibits as business records, we hold that the admission of the Exhibits did not violate Defendant's right to confront witnesses against him.

## CONCLUSION

**{31}** We affirm.

**{32}** **IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JENNIFER L. ATTREP, Judge**